(No. 68568.—

MARK A. KOTECKI v. CYCLOPS WELDING CORPO-
RATION, Appellee (Carus Chemical Company, Appel-
lant).

*Opinion filed April 18, 1991.—Rehearing
denied December 2, 1991.*

CALVO and HEIPLE, JJ., took no part.
FREEMAN, J., dissenting from denial of rehearing.

Herbolsheimer, Lannon, Henson, Duncan & Reagan,
P.C., of La Salle (Michael T. Reagan and Robert M. Han-
sen, of counsel), for appellant.

Edward M. Rubin, of Johnson, Cusack & Bell, Ltd.,
of Chicago (Thomas H. Fegan, of counsel), for appellee.

Bruce Robert Pfaff and Kathryn A. Bettasso, of Chi-
cago, for *amicus curiae* Illinois Trial Lawyers Associa-
tion.

JUSTICE MORAN delivered the opinion of the court:

Mark A. Kotecki (Kotecki) brought an action in
La Salle County for personal injury, allegedly caused by

defendant Cyclops Welding Corporation's (Cyclops) negligence in the design and construction of an agitator, used on the premises of Carus Chemical Company (Carus), Kotecki's employer. Cyclops then filed a third-party complaint against Carus, seeking contribution. Carus moved to strike the *ad damnum* clause of the third-party complaint for contribution. The trial court denied the motion, but made the necessary findings for an interlocutory appeal according to Supreme Court Rule 308 (107 Ill. 2d R. 308(a)). The appellate court denied Carus' petition for leave to appeal. Carus' petition for leave to appeal to this court was granted (107 Ill. 2d R. 315).

The sole issue on appeal is whether an employer, sued as a third-party defendant in a product liability case, is liable for contribution in an amount greater than its statutory liability under the Workers' Compensation Act.

As this is an interlocutory appeal, all of the facts are gleaned from the pleadings. Kotecki, in his complaint, alleges that he sustained personal injury when he caught his hand in the motor of an agitator; that the injury occurred while he was acting in the scope of his employment with Carus; and that Cyclops negligently designed, constructed, and installed the agitator on the Carus property without sufficient guarding devices for the motor and drive system.

Cyclops then filed a third-party complaint against Carus, alleging various acts of negligence. Cyclops thus sought contribution from Carus under the Contribution Act (Ill. Rev. Stat. 1987, ch. 70, par. 301 *et seq.*), in an amount proportionate with the degree of fault attributable to Carus' culpability, if it is found liable to Kotecki at trial.

The third-party defendant, Carus, then filed a motion to strike the *ad damnum* clause of the third-party

complaint, asserting that section 5 of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.5 *et seq.*), when read in conjunction with the Contribution Act, serves to limit the amount of liability of an employer to an amount no greater than the workers' compensation exposure of the employer. Cyclops filed a response, the motion was heard, and the trial court then denied the motion.

The trial judge found that the motion, and his subsequent ruling, involved a question of law as to which there was a substantial ground for difference of opinion, and that an immediate appeal from his order would materially advance the ultimate termination of this case. His order stated that the controlling question of law is as follows:

> "Whether an employer sued as a third-party defendant in a products liability case is liable in contribution for any amount in excess of the employer's statutory liability under the Worker's Compensation Act."

Carus filed an interlocutory petition for leave to appeal, which the appellate court denied. Carus then filed a petition of leave to appeal to this court, which was allowed. The Illinois Trial Lawyers Association filed a brief, as *amicus curiae*, in support of Cyclops. The sole issue on review is the trial court's certified question.

Any discussion of the effect of workers' compensation on the Contribution Act must begin with *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1. In *Skinner*, the court held that a defendant manufacturer sued in strict tort liability had a right of contribution against the employer (whose conduct may have contributed to the injury) of an injured worker. The plaintiff, Rita Skinner, was injured while she was using an injection molding machine and she sued the machine's manufacturer under strict product liability. The manufacturer filed a third-party action

against her employer for contribution, alleging negligence. This court found that the trial court's dismissal of the third-party action was error. (*Skinner*, 70 Ill. 2d at 16.) It additionally found that there is a right of contribution among joint tortfeasors, and that the doctrine would apply prospectively only. *Skinner*, 70 Ill. 2d at 16.

Following this court's decision in *Skinner*, the legislature passed the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1989, ch. 70, pars. 301 through 305) (Contribution Act). For the purposes of this case, the statute states in pertinent part:

> "[W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." Ill. Rev. Stat. 1989, ch. 70, par. 302(a).

In *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, the court had before it the issue of whether an employer could be liable to a manufacturer for contribution, in light of the Contribution Act. Doyle, a flagman on a road construction project, sued Rhodes, a motorist, for striking him with her car. Rhodes filed a third-party action seeking contribution from Doyle's employer. The trial court dismissed the third-party claim, but this court reversed that judgment. (*Doyle*, 101 Ill. 2d at 19.) Thus in *Doyle*, the court was required to consider the effect that the Contribution Act had on *Skinner*. While recognizing that the Workers' Compensation Act gives an employer immunity from tort actions by its employees, this court, in *Doyle*, found that there is no bar to a claim for contribution from that employer by a defendant held liable to that employee. *Doyle*, 101 Ill. 2d at 14.

The court also held that the Contribution Act "was intended to codify the *Skinner* decision, [and] not to diminish its scope." (*Doyle*, 101 Ill. 2d at 8.) The court additionally found that the phrase in the Contribution Act, "subject to liability in tort" (Ill. Rev. Stat. 1989, ch. 70, par. 302(a)), did not exempt employers who pay workers' compensation benefits to the injured employee from the Act. The court noted, in response to the employer's charge that the Contribution Act was ambiguous on this point, that:

> "The language relied on by the employer is neither unambiguous nor should it be construed in the way the employer seeks to apply it. The Workers' Compensation Act provides employers with a defense against any action that may be asserted against them in tort, but that defense is an affirmative one whose elements—the employment relationship and the nexus between the employment and the injury—must be established by the employer, and which is waived if not asserted by him in the trial court. [Citations.] Thus, the plaintiff may recover a tort judgment against his employer for a work-related injury if the employer fails to raise the defense the Workers' Compensation Act gives him (see *Rhodes v. Industrial Com.* (1982), 92 Ill. 2d 467, 471), and on occasion the employer may choose not to raise it in the hope that the plaintiff will be unable to prove negligence to a jury's satisfaction. The potential for tort liability exists until the defense is established." *Doyle*, 101 Ill. 2d at 10-11.

In *Doyle*, the court also noted that it was not determining all of the issues concerning the interplay between the Workers' Compensation Act and the Contribution Act. The court specifically noted that it was not determining what effect its decision would have on the relevance of section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b)), which allows the employer to recoup an amount of the com-

pensation paid from the proceeds of any award, judgment or settlement fund, out of which the employee may be compensated by a third party. The court stated:

> "The extent to which any right of contribution from the employer under the Contribution Act may impact upon this right of recoupment by the employer has not been raised by the parties in their pleadings and consequently not briefed. At this point, \*\*\* we are not prepared to indicate how this aspect of the Compensation Act may affect the operation of the Contribution Act or what adjustments will be necessary because of the recoupment provision. *Nevertheless, we caution that some accommodation between these two statutes may be in order.*" (Emphasis added.) *Doyle*, 101 Ill. 2d at 14-15.

Carus essentially argues that although it is clear that an employer can be held liable for contribution to a manufacturer, this court has never stated if that amount is limited by the employer's workers' compensation liability. Cyclops (and the *amicus*, Illinois Trial Lawyers Association) argues that *Doyle* has clearly held that a manufacturer has a right to contribution from the employer, and the amount that the employer can be required to pay is limited only by the extent of the damages that are attributable to the employer's negligence. We find that *Doyle* does not squarely answer the question as to the *amount* of contribution that an employer may be liable for under the Contribution Act. Rather, *Doyle* stands for the proposition that a negligent employer *is liable* for contribution to a third party, regardless of the Workers' Compensation Act.

Cyclops strenuously argues that any limitation on the amount of contribution that an employer would be required to make under the Contribution Act would require a "change" in the law. However, much of Cy-

clops' argument concerning the current state of the law is based on pre-*Skinner* indemnity cases. (*John Griffiths & Son Co. v. National Fireproofing Co.* (1923), 310 Ill. 331; *Miller v. DeWitt* (1967), 37 Ill. 2d 273; *Moroni v. Intrusion-Prepakt, Inc.* (1960), 24 Ill. App. 2d 534.) These indemnity cases are of no help in resolving the question in the instant case, as this case concerns contribution, not indemnity, and this court has specifically stated:

> "Indemnity and contribution are mutually exclusive remedies for allocating a plaintiff's damages among joint tortfeasors with liability to the plaintiff. Indemnity allows a defendant who satisfies a judgment for which he and another tortfeasor or tortfeasors are jointly and severally liable to recover from the other tortfeasor or tortfeasors the entire amount he was obligated to pay. [Citations.] To have the right to indemnity there must have been a pretort relationship between the guilty parties and a qualitative difference in their conduct in the occurrence." *Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, 254-55.

Cyclops also argues that this court should not examine any potential limitations on the amount that an employer could be required to contribute because the legislature is currently considering various pending bills in this area of the law. (Cyclops cited potential legislative amendments to the Workers' Compensation Act or the Contribution Act which would bar a third party from filing a third-party complaint against an employer. However, all of the bills that Cyclops cites either were tabled or left pending at the end of the legislative term.) Nevertheless, as this court has noted:

> "We believe that the proper relationship between the legislature and the court is one of cooperation and assistance in examining and changing the common law to conform with the ever-changing demands of the community. There are, however, times when there exists a mu-

tual state of inaction in which the court awaits action by the legislature and the legislature awaits guidance from the court. Such a stalemate is a manifest injustice to the public. When such a stalemate exists and the legislature has, for whatever reason, failed to act to remedy a gap in the common law that results in injustice, it is the imperative duty of the court to repair that injustice and reform the law to be responsive to the demands of society." (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 23-24 (despite the presence of six bills in the legislature, the court abolished the doctrine of contributory negligence).)

The preceding discussion of legislative inaction prior to *Alvis* concerned a "change" to be made in the common law. That discussion is equally applicable here, where the "change" concerns how this court reconciles two, potentially conflicting, statutes.

As the court noted in *Doyle*, "some accommodation" between the Contribution Act and the Workers' Compensation Act will be necessary in the future. (*Doyle*, 101 Ill. 2d at 15.) Contrary to Cyclops' suggestion, the question, as to whether or not there is a limit on the amount that an employer may be found liable for, was not answered in *Doyle*. Thus, even though the legislature may be considering legislation, this court will continue to shape the law as questions remaining from previous decisions are presented to this court for resolution.

The underlying controversy between workers' compensation and contribution was succinctly stated by the Minnesota Supreme Court:

"If contribution or indemnity is allowed, the employer may be forced to pay his employee—through the conduit of the third-party tortfeasor—an amount in excess of his statutory workers' compensation liability. This arguably thwarts the central concept behind workers' compensation, i.e., that the employer and employee receive the

benefits of a guaranteed, fixed-schedule, nonfault recovery system, which then constitutes the exclusive liability of the employer to his employee. [Citation.] If contribution or indemnity is not allowed, a third-party stranger to the workers' compensation system is made to bear the burden of a full common-law judgment despite possibly greater fault on the part of the employer. This obvious inequity is further exacerbated by the right of the employer to recover directly or indirectly from the third party the amount he has paid in compensation regardless of the employer's own negligence. [Citations.] Thus, the third party is forced to subsidize a workers' compensation system in a proportion greater than his own fault and at a financial level far in excess of the workers' compensation schedule." (*Lambertson v. Cincinnati Corp.* (1977), 312 Minn. 114, 119-20, 257 N.W.2d 679, 684.)

Under the Contribution Act, as interpreted in *Doyle*, the second problem discussed by the Minnesota court, whether the third party will pay too much, is not an issue in Illinois, as an employer will clearly be liable for contribution. Rather, the issue is whether the employer will be forced to pay too much, thereby losing the protection that the Workers' Compensation Act is supposed to provide.

The majority (45) of other jurisdictions do not allow a contribution action against an employer, from a defendant sued in tort, by an injured employee. (See Sherman, *Contribution from Employers: Availability, Good Faith Settlements and What the Future May Hold*, 75 Ill. B.J. 568, 572 n.52 (June 1987) (collecting cases).) At the other end of the spectrum, only New York allows a defendant to recover unlimited contribution from negligent employers. (See *Dole v. Dow Chemical Co.* (1972), 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288.) However, in *Dole*, the New York Court of Appeals abandoned the distinction between implied in-

demnity and contribution, and found there to be a rule of apportionment of damages based on the respective fault of the parties. (*Dole*, 30 N.Y.2d at 148-49, 331 N.Y.S.2d at 387, 282 N.E.2d at 292.) As has been previously stated in this opinion, this court has stated that the difference between indemnity and contribution is distinct and meaningful. (See *Frazer*, 123 Ill. 2d at 254.) Thus, the New York example is not that helpful for the resolution of this case.

The Minnesota Supreme Court adopted a rule finding that, as in Illinois, an employer could be required to contribute, but that the amount of an employer's contribution would be limited by its workers' compensation liability. (*Lambertson*, 312 Minn. at 130, 257 N.W.2d at 689.) The "Minnesota rule" was adopted from a decision of the Pennsylvania Supreme Court. (*Maio v. Fahs* (1940), 339 Pa. 180, 14 A.2d 105 (overruled by statute, see *Tsarnas v. Jones & Laughlin Steel Corp.* (1980), 488 Pa. 513, 517-18, 412 A.2d 1094, 1095).) The Minnesota rule arguably strikes a balance between the competing interests of the employer, as a participant in the workers' compensation system, and the equitable interests of the third-party plaintiff in not being forced to pay more than its established fault. Notably, this approach has been adopted by legislation in Idaho. See *Runcorn v. Shearer Lumber Products, Inc.* (1984), 107 Idaho 389, 395, 690 P.2d 324, 330.

In Illinois, the competing interests between the Contribution Act and the Workers' Compensation Act that were discussed by the Minnesota Supreme Court are equally as strong. The Contribution Act was clearly meant to codify *Skinner* by requiring that tortfeasors contribute in proportion to their fault in causing an injury. (See *Doyle*, 101 Ill. 2d at 8.) However, there are still portions of the Workers' Compensation Act which are in apparent conflict with the Contribution Act's

principles: *i.e.*, an employer has a statutory lien on a portion of the proceeds that an employee obtains from a third party (Ill. Rev. Stat. 1989, ch. 48, par. 138.5(b)); and the employee who collects workers' compensation has no statutory or common law right to recover damages from his employer (Ill. Rev. Stat. 1989, ch. 48, par. 138.5(a)). Furthermore, section 11 of the Workers' Compensation Act states, in pertinent part: "The compensation herein provided *** shall be the measure of the responsibility of any employer." Ill. Rev. Stat. 1989, ch. 48, par. 138.11.

We find that the Minnesota rule provides the fairest and most equitable balance between the competing interests of the employer and the third-party plaintiff. The Minnesota rule is also the natural "accommodation" that this court, in *Doyle*, said would be needed to reconcile the Contribution Act and the Workers' Compensation Act. Limiting the amount of contribution of an employer to its liability under workers' compensation:

> "allows the third party to obtain limited contribution, but substantially preserves the employer's interest in not paying more than workers' compensation liability. While this approach may not allow full contribution recovery to the third party in all cases, it is the solution we consider most consistent with fairness and the various statutory schemes before us." *Lambertson*, 312 Minn. at 130, 257 N.W.2d at 689.

The language of the Workers' Compensation Act clearly shows an intent that the employer only be required to pay an employee the statutory benefits. These limited benefits are paid in exchange for a no-fault system of recovery. The Contribution Act, as this court held in *Doyle*, requires that the employers contribute to tort judgments if they are partially responsible for an employee's injuries.

Because this case is before us at the pleading stage, it would be inappropriate to consider whether Carus is liable to Cyclops for contribution, and how much that liability should be. Resolution of these questions will depend upon the facts as developed at trial. However, the ruling of the trial court, denying Carus' motion to strike the *ad damnum* clause of Cyclops' third-party complaint, is reversed. The trial court is directed to strike the *ad damnum* clause of the third-party complaint, and to permit the defendant/third-party plaintiff, Cyclops, to seek contribution in an amount not greater than the workers' compensation liability of the third-party defendant, Carus.

*Reversed and remanded,*
*with directions.*

JUSTICES CALVO and HEIPLE took no part in the consideration or decision of this case.

### Dissenting Opinion Upon Denial of Rehearing

JUSTICE FREEMAN, dissenting:

I must respectfully dissent from the decision of my colleagues to deny the petition for rehearing in this cause.

Notwithstanding my concurrence in the original opinion of this court in this case, I re-examined the issues presented in this appeal and the consequences and implications of our opinion in determining whether to vote to grant the petition for rehearing filed by the appellee, Cyclops. Upon doing so, I believe that the decision to limit the right of contribution from employers for workplace injuries suffered by their employees is in error and therefore dissent from the denial of the petition for rehearing.

The major, but not sole, reason why I believe this court should rehear this cause is the effect which a fact

cited by the appellant, Carus, in the original appeal, *viz.*, the enactment of the current Workers' Compensation Act prior to the enactment of the Contribution Act, has upon this court's determination of the issue presented. Although neither Cyclops nor the *amicus curiae* cited that fact or its effect upon our determination in the original appeal or in petitioning for a rehearing, I believe that fact absolutely obligates this court to grant the petition for rehearing in this cause.

Although the court's opinion does not explicitly acknowledge it, what we were called upon to do in deciding the issue presented in this appeal, *i.e.*, whether the Workers' Compensation Act limits a product manufacturer's right to contribution from an employer for the manufacturer's liability to the latter's employee, was to determine the legislature's intent in enacting the Workers' Compensation Act and the Contribution Act. See, *e.g.*, *State v. Mikusch* (1990), 138 Ill. 2d 242.

In *Mikusch*, this court stated that: in order to regard apparently conflicting provisions of the Illinois Vehicle Code and the Human Rights Act as capable of being harmonized, it would consider whether the legislature intended the former to be an exception to the latter; since the language of neither the Act nor the Code was directed to the question, the court "must" consider general rules of statutory construction; and, the fundamental rule of statutory construction is to give effect to the legislature's intent. *Mikusch*, 138 Ill. 2d at 247.

Similarly to our observation in *Mikusch*, we recognized in our original decision herein that this case involves the reconciliation of "two, potentially conflicting, statutes." Accordingly, consideration of the legislature's intent in enacting the statutory provisions involved in this case is just as legitimate, and, therefore, should have been just as controlling, a factor in our original decision in this case as it was in *Mikusch*. Moreover, since

the language of neither the Workers' Compensation Act nor the Contribution Act is explicitly directed to the question to be resolved, general rules of statutory construction are just as legitimate, and, therefore, should have been just as controlling, a consideration in this case as they were in *Mikusch* in determining the legislature's intent in enacting the statutory provisions involved.

There are myriad general rules of statutory construction which are used as aids in determining legislative intent. However, of all such rules, in re-examining the issue in this case, I find the following to be of paramount importance.

It is fundamental that statutes are to be read in light of the attendant conditions and the state of the law at the time of their enactment. The legislative intent that controls the courts in the construction of statutes has a reference to the legislature which passed a given act. Statutes are to be construed as they were intended to be construed when they were enacted. The office of the courts is to interpret the language used where it requires interpretation, not to annex new provisions which the legislature did not itself impose. *People v. Boreman* (1948), 401 Ill. 566, 572; see also *Sayles v. Thompson* (1983), 99 Ill. 2d 122, 125 (meaning of statute depends upon the intent of the drafters at the time of its adoption, and it is a long-standing principle of statutory construction that it is the court's duty to ascertain and effectuate that intent).

Similarly, this court has also recognized that, in striving to achieve the primary goal of statutory construction, *i.e.*, to ascertain and give effect to the legislature's intent, courts should consider the reason or necessity for the act, the contemporaneous conditions, existing circumstances and the object sought to be achieved by the statute. *People ex rel. Joseph v. Pennsylvania R.R. Co.* (1959), 18 Ill. 2d 61, 66.

In view of the facts that the current Workers' Compensation Act was enacted in 1951 (1951 Ill. Laws 1060 *et seq.*) and that contribution among joint tortfeasors was not allowed in Illinois until this court's 1977 decision in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, a fact which Carus conceded in its original brief on appeal, application of the above-stated rules to the issue in *Kotecki* can yield but one conclusion. That conclusion is that it could not have been the intent of the legislature which passed the current Workers' Compensation Act to limit *to any extent* the right to contribution, from an employer, of a manufacturer sued by an employee injured by a defective product. It could not have been that legislature's intent to limit that right because, as Carus concedes, contribution did not exist in Illinois at the time of the enactment of the original Workers' Compensation Act. That being the case, it was improper for this court to effectively attribute to the legislature which passed the Act an intent which it could not possibly have had at that time. Nor could this court properly conclude that, had the legislature considered the issue, it would have intended the result reached in this case.

In its main brief in the original appeal, Carus argued that inasmuch as contribution did not exist in Illinois at the time the Act was first enacted, it would not be unjust to now construe the Workers' Compensation Act and the Contribution Act to deny the right of unlimited contribution asserted in this case. Carus' argument does have a certain amount of practical and logical appeal. However, I believe that this court could reach such a conclusion only by ignoring the fundamental principles of statutory construction cited above. As such, I cannot join in the denial of the petition for rehearing.

Also convincing me that our original decision in this cause was wrong is the fact that this court has reached

similar results to that mandated in this cause by the cited rules of statutory construction without relying, at least expressly, thereon.

In *Stephens v. McBride* (1983), 97 Ill. 2d 515, the court held that failure of the plaintiff in a primary lawsuit against a private individual to comply with the notice-of-injury requirements of the Local Governmental and Governmental Employees Tort Immunity Act did not bar that defendant's contribution action against a municipality. In so doing, the court reasoned, *inter alia*:

> "[T]he Tort Immunity Act's notice provisions do not apply to an action for contribution. *** The doctrine of contribution was recognized in this jurisdiction in 1977 when this court decided [*Skinner*]. *** The [Tort Immunity Act] was enacted prior to our decision in *Skinner* and did not purport to deal with contribution actions." *Stephens*, 97 Ill. 2d at 521-22.

Similarly to this court's reasoning in *Stephens*, the court in *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, held that a statutory requirement of referendum approval for the issuance of general obligation bonds by Cook County which predated the creation of home rule units of local government in the Constitution of 1970 was not thereafter of any force or effect upon the county. In so holding, this court, *inter alia*, noted that the statute containing the referendum requirement had been enacted prior to and not in anticipation of the recognition of the concept of home rule. The court therefore reasoned that, because the concept of home rule was "totally foreign in the contemplation of legislation" adopted prior to 1970, such legislation was inconsistent with and overridden by the creation of home rule powers. *Kanellos*, 53 Ill. 2d at 166-67.

Even setting aside the rules of statutory construction cited above, *Stephens* and *Kanellos* reveal an unavoidable conclusion: the fact that the Act was enacted prior

to the recognition of the doctrine of contribution in Illinois absolutely precludes attributing to the legislature an intent, *viz.*, to limit the right of contribution of third parties sued by an employee as against his employer, which it could not have had at the time the Workers' Compensation Act was enacted. Because the concept of contribution must necessarily have been totally foreign in the contemplation of any legislation adopted prior to 1977, the Workers' Compensation Act, enacted in 1951, cannot be deemed by this court as controlling a question which arises as a result of the Contribution Act, a post-1977 legislative enactment.

*Stephens* also disposes of any possible argument that, by allowing unlimited contribution from an employer, this court would be allowing an employee to do indirectly what section 5(a) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(a)) prohibits him from doing directly, *i.e.*, recover from his employer over and above what the Act allows. (See, *e.g.*, *Redwing Carriers, Inc. v. Crown Central Petroleum Corp.* (Ala. 1978), 356 So. 2d 1203.) In *Stephens*, this court wrote:

> "[O]ur decision here does not permit the injured plaintiff to recover indirectly from the governmental entity although he is precluded from directly recovering from it. \*\*\* The Supreme Court of California noted [in *People ex rel. Department of Transportation v. Superior Court* (1980), 608 P.2d 673] that the plaintiff would still be barred from recovering directly from the governmental defendant, and if he failed to prove that the nongovernmental defendant was liable, or if that defendant were insolvent, the plaintiff would be able to recover nothing, either directly or indirectly, from the governmental defendant. *Moreover, the doctrine of joint and several liability allows the plaintiff to recover fully for his injuries from the nongovernmental defendant whether or not that defendant can recover from the governmental defendant. As this court has recently reaffirmed the viability of the*

*doctrine of joint and several liability [citation], plaintiff gains nothing if defendant is permitted to recover contribution from the village."* (Emphasis added.) *Stephens,* 97 Ill. 2d at 524-25.

*Stephens* did not involve any claim under the Workers' Compensation Act. That distinction notwithstanding, the rationale that allowing a contribution action does not allow the plaintiff in the primary action to do indirectly what he cannot do directly is as applicable to this case as it was therein.

The third and fourth reasons why I believe our original decision in this cause was erroneous, in addition to the previously cited rules of statutory construction and *Stephens* and *Kanellos,* are the rules that, where there is an undeniable conflict between them, a general statute relating to a subject must give way to a specific statute on the same subject and an earlier statute must give way to a later-enacted statute, as the later expression of legislative intent. See, *e.g., State v. Mikusch* (1990), 138 Ill. 2d 242, 254.

In its main brief on appeal, Carus argued that the Workers' Compensation Act was the specific statute on the subject of an employer's liability for workplace injuries while the Contribution Act was the general statute on the subject of contribution actions. Therefore, Carus concluded, the Workers' Compensation Act should govern over the Contribution Act in this case. I now disagree with that conclusion.

Even assuming, *arguendo,* that the Workers' Compensation Act and Contribution Act are *in pari materia* and that, therefore, the "general v. specific" rule of statutory construction can be applied to them, I fail to understand how the Workers' Compensation Act can be characterized as "specific" on the subject of employer liability for contribution to third parties for injuries to employees. The Act nowhere specifically mentions such lia-

bility. Indeed, that failure by the legislature which enacted the Workers' Compensation Act (which is understandable given the nonrecognition of the right of contribution in Illinois at the time of its enactment) is the root cause of the controversy in this case. Even ignoring the nonrecognition of contribution at the time of enactment, I simply do not understand how this court could, in the face of its failure to contain any specific reference thereto, consider the Act as specific on the subject of employer liability for contribution, especially in light of of the Contribution Act.

Rather than dealing specifically with an employer's contribution liability, the Workers' Compensation Act merely states in general terms: that no common law or statutory right to recover damages for injury or death sustained by an employee other than the compensation provided therein shall be available to a covered employee, any dependent or any one otherwise entitled to recover damages for such injury (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(a)); and that the compensation therein provided shall be the measure of the responsibility of a covered employer (Ill. Rev. Stat. 1987, ch. 48, par. 138.11).

In contrast, the Contribution Act specifically deals with contribution. To the extent that the Act does not limit the right thereto in "third party v. employer" actions, this court should, in view of the Workers' Compensation Act's failure to specifically limit that right, give effect to the evident legislative intent not to limit that right in such actions.

The foregoing principles of statutory construction and case law sufficiently call into question this court's original decision in this case to warrant a complete reconsideration thereof pursuant to the petition for rehearing.

However, those principles and case law are not the sole reasons for granting a rehearing in this cause. In its petition for rehearing, Cyclops has posed many questions

assertedly left unresolved by the original opinion in this cause. I believe that those questions do not, alone, warrant a reconsideration of this cause inasmuch as they can be answered by subsequent case law. What I do believe also warrants a granting of a rehearing, or, at least, a supplemental opinion of this court, is the question as to the operation of the result of our original opinion in this cause. As Cyclops correctly points out, this court has, in the past, explicitly confined fundamental changes in the law to prospective operation only. (See, e.g., *Skinner*, 70 Ill. 2d 1; *Alvis v. Ribar* (1981), 85 Ill. 2d 1.) The rule established in this cause is so fundamental a change in the law of contribution that this court should avoid unnecessary confusion by the bench and bar of Illinois as to its application by explicitly stating whether it is to applied retroactively or prospectively.

I, like my colleagues, am troubled by the "potentially conflicting" provisions of the Workers' Compensation Act and the Contribution Act. However, in light of the nonexistence of the right of contribution at the time of the enactment of the Workers' Compensation Act, I have now concluded that this court cannot avoid finding a conflict therein by, in effect, attributing to the legislature which first passed the Act a nonexistent intent in so doing. To the extent that we have done so in this cause, I believe we have usurped the proper role and authority of the Illinois legislature. In this regard, while this court has, as the opinion in this cause notes, acted in the past in the face of legislative inaction upon an issue, I do not believe that any amount of legislative inaction can justify a transgression of our constitutional role.

In the final analysis, I now agree with Professor Larson, who, on the very issue involved in this cause, *viz.*, "did the compensation acts, in conferring immunity on the employer from common-law suits, mean to do so only

at the expense of the injured employee, or also at the expense of outsiders," concluded:

> "A situation like this ought to be dealt with legislatively. It is rather inconsiderate to force courts to speculate about legislative intention on the strength of statutory language, *in the framing of which the draftsmen had not the remotest trace of the present question in their minds*. The legislature should face squarely the question whether the third party who happens to be so unfortunate as to get tangled up with a compensable injury, should, so to speak, individually subsidize the compensation system by bearing alone a burden which normally he could shift to the employer." (Emphasis added.) Larson, *Workmen's Compensation Acts: Third Party's Action Over Against Employer*, 65 Nw. U. L. Rev. 351, 420 (1970).

For all of the reasons stated herein, I dissent from the denial of the petition for rehearing in this cause.