JOSEPH COSTILOE, Plaintiff, v. ALLIS-CHALMERS CORPORATION *et al.*, Defendants and Third-Party Plaintiffs-Appellees (Quantum Chemical Corporation, Third-Party Defendant-Appellant; Kelly Services, Inc., Third-Party Defendant).

Third District   No. 3—92—0497

Opinion filed June 14, 1993.

SLATER, J., concurring in part and dissenting in part.

John R. Brandenburg (argued) and William E. Nelson, both of John R. Brandenburg & Associates, Ltd., of Chicago, for appellant.

Robert Townsend (argued) and Thomas H. Fegan, both of Johnson & Bell, Ltd., of Chicago, for appellees Allis-Chalmers Corporation and Allis-Chalmers Leasing Services Corporation.

Cory D. Lund, of Hinshaw & Culbertson, of Joliet, and Bruce L. Carmen (argued), of Hinshaw & Culbertson, of Chicago, for appellee Carpenter & Klein Equipment Company.

JUSTICE STOUDER delivered the opinion of the court:

This case comes before the court as a permissive interlocutory appeal pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308), and concerns a borrowing employer's liability for contribution to a manufacturer who is sued by the employer's borrowed employee. The issue presented in this appeal is whether a borrowing employer is entitled to the limitation on the amount of its contribution liability which is given to employers generally under *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 585 N.E.2d 1023. We find that borrowing employers are entitled to the *Kotecki* limitation.

Joseph Costiloe was an employee of Kelly Services, Inc. (Kelly), a company in the business of providing temporary employees to various employers. Costiloe was assigned to work at Quantum Chemical Corporation's (Quantum's) chemical plant in Morris, Illinois. He was injured while operating a forklift at the plant. Pursuant to an agreement between Kelly and Quantum, Kelly paid Costiloe's worker's compensation benefits in the amount of $35,693.22.

Costiloe brought a product liability action against the forklift manufacturer, Allis-Chalmers Corporation; the forklift distributor, Allis-Chalmers Leasing Corporation; and the lessor of the forklift, Carpenter & Klein Equipment Co., alleging that defendants manufactured and distributed an unreasonably dangerous and defective product. Defendants (hereinafter third-party plaintiffs) then filed third-party complaints for contribution against Quantum and Kelly. Quantum filed a motion for summary judgment, asserting that it was not liable for contribution to the third-party plaintiffs in light

of the rule set out in *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 585 N.E.2d 1023. The trial court denied the motion.

In *Kotecki*, our supreme court addressed the issue of an employer's liability under contribution when sued as a third-party defendant in a product liability case brought by its employee. After discussing the competing interests of the Joint Tortfeasor Contribution Act (Ill. Rev. Stat. 1989, ch. 70, pars. 301 through 305) and the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*), the court reaffirmed the general rule that an employer's immunity from direct suit by its employee under the Workers' Compensation Act does not bar an action for contribution asserted against an employer by a defendant liable to the injured employee. (*Kotecki*, 146 Ill. 2d at 163, 585 N.E.2d at 1027; *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382.) However, to protect the employer's interest in limiting its liability to its employee, the court adopted the so-called "Minnesota Rule," which limits an employer's contribution liability to an amount not greater than its liability under the Workers' Compensation Act. The court found this rule to be the fairest and most equitable balance "between the competing interests of the employer, as a participant in the workers' compensation system, and the equitable interests of the third-party *** in not being forced to pay more than its established fault." *Kotecki*, 146 Ill. 2d at 164, 585 N.E.2d at 1027.

Third-party plaintiffs argue that Quantum, as a borrowing employer, should not be afforded protection under *Kotecki*. They contend that the purpose of the *Kotecki* holding is to ensure that employers do not have to pay more than the benefits defined by the Workers' Compensation Act. In this case, Kelly paid Costiloe's benefits on behalf of Quantum. Because Quantum paid nothing, third-party plaintiffs argue that the policy considerations present in *Kotecki* are lacking here and that Quantum should not be entitled to limit its liability to the amount of Costiloe's worker's compensation benefits.

■ We disagree with the third-party plaintiffs' argument. The Workers' Compensation Act provides for joint and several liability between lending and borrowing employers. (Ill. Rev. Stat. 1991, ch. 48, par. 138.1(a)(4).) Between them, the borrowing employer is primarily liable, and the lending employer may recover from the borrowing employer any benefits paid to the employee, *unless there is an agreement to the contrary*. Section 1(a)(4) of the Workers' Compensation Act provides in relevant part:

"Where an employer *** loans an employee *** the liability of such loaning and borrowing employers is joint and several, provided that such loaning employer is in the absence of agreement to the contrary entitled to receive from such borrowing employer full reimbursement for all funds paid when incurred pursuant to this paragraph ***. ***
* * *

An employer whose business or enterprise or a substantial part thereof consists of hiring, procuring or furnishing employees to or for other employers *** shall be deemed a loaning employer within the meaning and provisions of this Section." Ill. Rev. Stat. 1991, ch. 48, par. 138.1(a)(4).

The parties agree that this case involves a lending/borrowing employer situation. As the borrowing employer, Quantum was primarily liable for the payment of benefits. However, Quantum and Kelly had an agreement which provided that Kelly would pay the worker's compensation benefits for its loaned employee. This is clearly the type of "agreement to the contrary" contemplated by section 1(a)(4). This agreement, however, does not change the fact that Quantum is primarily liable for the payment of its borrowed employee's benefits. The agreement only affected Kelly's right of reimbursement for funds paid as a result of its joint and several liability.

The fact that Quantum and Kelly agreed that Kelly would pay the benefits does not mean that Quantum was not a participant in the worker's compensation system. Payment of benefits was part of the bargained-for consideration in the contract between Kelly and Quantum. Quantum relied on the fact that the payment of worker's compensation benefits constituted the extent of its liability to an injured employee. The fact that Quantum contracted with Kelly for the payment of those benefits should not affect Quantum's potential contribution. The third-party plaintiffs seem to argue that an employer cannot take advantage of the *Kotecki* limitation unless that employer pays worker's compensation benefits out of its own pocket. Adopting this argument would lead to the result that employers could not rely on *Kotecki* if it is the employer's insurance carrier, not the employer itself, who pays the benefits. We do not believe that was an intended result of *Kotecki*.

■ We disagree, however, with Quantum's argument that because it is entitled to the *Kotecki* limitation on liability, it is entitled to summary judgment on the contribution claims. Quantum contends that its contribution liability has been "extinguished" since

that liability is limited to an amount not greater than its workers' compensation liability, and that amount (*i.e.*, Costiloe's benefits) has already been paid. Quantum misconstrues the holding in *Kotecki.* *Kotecki* does *not* hold that an employer who has paid benefits is not liable for contribution. On the contrary, *Kotecki* reaffirmed the rule set out in *Doyle* that employers are liable for contribution regardless of the immunity provided by sections 5(a) and 11 of the Workers' Compensation Act (Ill. Rev. Stat. 1991, ch. 48, pars. 138.5(a), 138.11). (*Kotecki*, 146 Ill. 2d at 163, 585 N.E.2d at 1027.) *Kotecki* dealt only with the *amount* of contribution that an employer may be liable for in such an action. (*Kotecki*, 146 Ill. 2d at 160, 585 N.E.2d at 1025.) The contribution action is between the third-party plaintiff and the employer/third-party defendant. Whether or not the employer has paid benefits to its employee is irrelevant to the question of whether the employer is liable for contribution.

An employer can be held liable for contribution up to the amount of its worker's compensation liability even if it has already paid benefits. This is evident from a review of *Lambertson v. Cincinnati Corp.* (1977), 312 Minn. 114, 257 N.W.2d 679, the case from which the *Kotecki* court adopted the Minnesota rule. In *Lambertson*, the court stated that the employer/third-party defendant had previously paid its employee's benefits. Nevertheless, the court remanded the case with instructions to grant contribution to the third-party plaintiff from the employer in an amount proportional to its percentage of negligence, but not to exceed its total worker's compensation liability to plaintiff. (*Lambertson*, 312 Minn. at 130, 257 N.W.2d at 689.) Clearly, the payment of benefits does not absolve the employer from contribution liability.

Quantum points to the statement of the court in *Kotecki* that "[t]he language of the Workers' Compensation Act clearly shows an intent that the employer only be required to pay an employee the statutory benefits. These limited benefits are paid in exchange for a no-fault system of recovery." (*Kotecki*, 146 Ill. 2d at 165, 585 N.E.2d at 1028.) We note that, under the Minnesota rule, an employer will only pay the worker's compensation benefits once, because even if the employer is found negligent and required to contribute the full amount of its worker's compensation liability to a third-party plaintiff, the employer will still be able to recover the original benefits paid to its employee through its statutory lien (Ill. Rev. Stat. 1991, ch. 48, par. 138.5(b)). (See *Johnson v. Raske Building Systems, Inc.* (Minn. 1979), 276 N.W.2d 79 (employers held liable for contribution under the Minnesota rule still entitled to statu-

tory lien which protects employers from double liability).) We realize that in this case Kelly paid Costiloe's benefits and therefore Quantum has no lien. That, however, is merely a result of the contractual relationship between the parties. That contractual relationship does not change the fact that, as an employer, Quantum may be found liable for contribution up to the amount of its worker's compensation liability.

■ The order of the trial court also requests that we determine whether Kelly, as a lending employer, is entitled to the *Kotecki* liability limitation. We find that Kelly is so entitled. As stated above, loaning and borrowing employers are jointly and severally liable for the payment of benefits to a loaned/borrowed employee (Ill. Rev. Stat. 1991, ch. 48, par. 138.1(a)(4)). Although the borrowing employer is primarily liable, both employers are subject to the same potential liability to the injured employee. We see no reason why loaning employers should be subject to unlimited contribution liability when, in fact, they are subject to the same worker's compensation liability as other employers.

We again note, however, that limiting Kelly's potential liability does not mean that Kelly's liability has been "extinguished" by the payment of benefits. The third-party plaintiffs may seek contribution from Kelly in an amount not to exceed Kelly's worker's compensation liability. In the event Kelly is found negligent and required to pay contribution, Kelly will be protected from double liability through enforcement of its statutory lien (Ill. Rev. Stat. 1991, ch. 48, par. 138.5(b)).

■ A question may arise on remand as to the actual amount of contribution which may be sought from each employer by the third-party plaintiffs. As previously noted, the liability between Quantum and Kelly under the Workers' Compensation Act is joint and several. By creating joint and several liability between borrowing and lending employers, the Workers' Compensation Act expresses an intent that the injured worker receive that to which he is entitled, without enlarging the amount that can be recovered. Quantum and Kelly were jointly and severally liable for $35,693.22 in worker's compensation benefits. Therefore, the total amount that the third-party plaintiffs may seek in contribution is $35,693.22

The third-party plaintiffs seem to argue that they should be entitled to seek that amount in contribution from each employer. Under this interpretation, third-party plaintiffs could theoretically recover up to $71,386.44. However, such an interpretation would be a perversion of the rule of joint and several liability. When two or

more parties are jointly and severally liable for a certain amount, they may be sued together or separately. The person suing can recover the full amount from the parties jointly or from any of them separately. What cannot happen is recovery of the full amount from all of the parties. *Kotecki* is clear in limiting the amount of contribution from an employer to an amount not to exceed the employer's worker's compensation liability. In this case, that liability is a joint and several liability between Quantum and Kelly for $35,693.22. Therefore, third-party plaintiffs can seek contribution from both Quantum and Kelly, but the total amount recovered cannot exceed $35,693.22.

In summary, we affirm the order of the trial court denying Quantum's motion for summary judgment. The trial court is directed to strike the *ad damnum* clauses of the third-party complaints, and to permit the third-party plaintiffs to seek contribution from Quantum and Kelly in an amount proportional to each employer's percentage of negligence, but not to exceed a total amount of $35,693.22.

Affirmed and remanded with directions.

BRESLIN, J., concurs.

JUSTICE SLATER, concurring in part and dissenting in part:
I am in complete agreement with the majority's decision that both Quantum and Kelly are entitled to the *Kotecki* liability limitation. I disagree with my colleagues only on the issue of the actual amount of contribution which may be sought from each employer in this case. I believe that the joint and several nature of the employers' workers' compensation liability under the Act should not carry over to the contribution action so as to further restrain the third-party plaintiffs' right to have liability apportioned based upon relative fault. The fact that the employers were jointly and severally liable for the payment of benefits should not entitle them to a *joint limit* on liability in a completely separate contribution action.

While I agree that Kelly and Quantum could not *both* be required to pay $35,692.23 in workers' compensation benefits, that is nevertheless the amount of each employer's independent compensation liability. If the contribution action was brought against Quantum only, its potential liability would be $35,693.23. I see no reason why Quantum's potential liability for contribution should change simply because Kelly is also sued for contribution. To hold other-

wise means that a borrowing employer's contribution liability depends not only upon its degree of fault and its workers' compensation liability, but also upon whether the lending employer is found negligent and to what degree.

I would therefore hold that the third-party plaintiffs should be entitled to seek contribution in the amount of $35,693.23 from each employer. This interpretation would not lead to a double recovery for either the third-party plaintiffs or the employee. Nor would it result in either employer facing double liability. Rather, it would further the equitable policy of allocating liability based upon relative fault.