2016 IL App (3d) 140794

Opinion filed April 28, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| NACIN R. BURHMESTER, | ) | Appeal from the Circuit Court |
| | ) | of the Thirteenth Judicial Circuit, |
| Plaintiff, | ) | LaSalle County, Illinois |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| STEVE SPIESS CONSTRUCTION, INC., | ) | Appeal No. 3-14-0794 |
| | ) | Circuit No. 08-L-185 |
| Defendant-Appellant and | ) | |
| Third-Party Plaintiff and | ) | |
| Appellant, | ) | |
| | ) | Honorable |
| (L.J. Keefe Company, Third-Party Defendant | ) | Eugene P. Daugherity, |
| and Appellee). | ) | Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Presiding Justice O'Brien and Justice McDade concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant and third-party plaintiff, Steve Spiess Construction Company (Spiess) appeals

from an order of the circuit court of La Salle County denying its motion for a directed verdict

against third-party defendant L.J. Keefe Co. (Keefe).  Spiess's motion sought to direct a verdict

denying Keefe's affirmative defense against Spiess's third-party claim based upon the *Kotecki*

doctrine. *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155 (1991). On appeal, Spiess maintains that it was error for the circuit court to deny its motion for a directed verdict on the *Kotecki* claim since Keefe had offered no evidence at trial to prove that it had a right to assert a *Kotecki* claim. As an alternative argument, Spiess maintains that the trial court erred in vacating its judgement against Keefe pursuant to *Kotecki* as no evidence had been presented regarding the past of future value of the underlying workers' compensation claim.

¶ 2                                    BACKGROUND

¶ 3      Nacin Burhmester was severely injured by an electrical shock while on the job on March 15, 2007. At the time of his injury he was employed by Keefe. Keefe was the electrical subcontractor on a construction site where Spiess was the general contractor. Burhmester filed a workers' compensation claim under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2004)) which was pending at the time of trial in the instant matter. In addition to his workers' compensation claim, Burhmester also filed a negligence action against Spiess. Spiess, in turn, filed a third-party action against Keefe seeking contribution on any judgment that Burhmester might obtain against it. Keefe filed an answer and an affirmative defense in which it asserted that any contribution that may recovered against it would be limited to the amount paid or payable in workers' compensation benefits pursuant to the so-called *Kotecki* doctrine.

¶ 4      All claims were tried before a jury. Burhmester's claim against Spiess was tried first and the jury returned a verdict against Spiess in the amount of $534,608.82. The trial court entered judgment for Burhmester and against Spiess in that amount. After the judgment was entered, Spiess proceeded with its trial against Keefe. At the close of evidence, counsel for Spiess made an oral motion for a directed verdict against Keefe, arguing that Keefe had failed to present evidence to establish its *Kotecki* claim as an affirmative defense. The trial court denied the

- 2 -

motion, ruling that *Kotecki* automatically applies in contribution claims, and the claim under *Kotecki* does not need to be raised as an affirmative defense or proven at trial. The trial court explained that its ruling was in accord with the holding in *Kim v. Alvey, Inc.*, 322 Ill. App. 3d 657, 662-68 (2001), and the proposition that *Kotecki*, being more in the nature of a set-off than an affirmative defense, applies as a matter of law.

¶ 5 The jury then returned a verdict finding that Burhmester was 30% at fault, Spiess 20% at fault and Keefe 50% at fault. The trial court then entered a contribution judgment in favor of Spiess and against Keefe in the amount of $374,720.58. Spiess filed a posttrial motion which renewed its request for a directed verdict against Keefe. The judgment was denied.

¶ 6 Keefe then filed its own posttrial motion seeking to waive its workers' compensation lien and dismiss Spiess's contribution action against it. Attached to its motion was an affidavit from the Keefe's workers' compensation insurance adjuster stating that Burhmester had received $95,487.23 in workers' compensation benefits. Keefe asserted that it could choose to waive its worker's compensation lien after trial. Spiess objected, arguing that if its motion for a directed verdict had been properly granted, it would prevent Keefe from being able to waive its lien post-trial. Spiess maintained that an employer can only waive its lien posttrial if its affirmative defense asserting *Kotecki* and the amount of the lien had been proven at trial, or were not in dispute. Spiess also objected to the affidavit on evidentiary grounds. The trial court denied those evidentiary objections.

¶ 7 The trial court granted Keefe's motion to dismiss Spiess's third-party complaint and vacated the judgment against Keefe. The court then adopted Keefe's calculation of its workers' compensation lien and entered an order granting Spiess as set-off of $95,487.23. Spiess subsequently filed this appeal.

¶ 8                                     ANALYSIS

¶ 9       1.  Is *Kotecki* an Affirmative Defense That Must be Plead or a Posttrial Claim for Set-off?

¶ 10     Spiess first maintains that the trial court erred in denying its motion for a directed verdict. We review the denial of a motion for directed verdict *de novo*.  *Hamilton v. Hastings*, 2014 IL App (4th) 131021, ¶ 24.

¶ 11     In denying Spiess's motion for a directed verdict, the trial court held that *Kotecki* is not a traditional affirmative defense which must be proven at trial by the defendant.  Instead, it held that *Kotecki* was more properly viewed as a set-off which the defendant merely had to show it was entitled to take against the judgment already entered against it.  In support of its holding, the trial court relied upon *Kim v. Alvey, Inc.*, 322 Ill. App. 3d 657 (2001).  The *Kim* court relied, in turn, upon our supreme court's holding in *LaFever v. Kemlite Co.*, 185 Ill. 2d 380 (1998).  Specifically, the *Kim* court determined:  "*LaFever* clearly allows an employer to raise its lien in a posttrial motion.  Alvey's argument that the *Kotecki* setoff limit is as an affirmative defense that must be raised prior to trial is not supported by existing case law." *Kim*, 322 Ill. App. 3d at 668. The *Kim* court further held that, under *LeFever*, "an employer is not required to raise its *Kotecki* setoff limit or workers' compensation lien as an affirmative defense or even before a trial." *Id.* at 668 n. 5.

¶ 12     Spiess argues that the holding in *Kim* is an "aberrant" decision which is in conflict with several other cases and that the *Kim* court misapplied the holding in *LeFever*.  Spiess maintains that the right to waive a workers' compensation lien after trial is separate and distinct from the need to prove the lien and its amount at trial.  It further maintains that, at best, *LeFever* stands for the proposition that an employer who has proven it can assert a workers' compensation set-off

pursuant to *Kotecki* can waive that set-off after a judgment has been entered. Additionally, Spiess suggests that any prior cases allowing an employer to assert a set-off pursuant to *Kotecki* implicitly did so only where the party seeking contribution stipulated to the lien or at least did not oppose the existence of the lien or its amount. Spiess maintains that its motion to dismiss the affirmative defense precludes Keefe from asserting its lien at any time, including post-trial.

¶ 13 Keefe maintains that the trial court properly relied upon the holding in *Kim*, which, in turn, properly followed our supreme court's holding in *LaFever*. In *LaFever*, our supreme court clearly held that "[a]n employer can waive the lien it holds on the worker's recovery in his personal injury action" and "by waiving its section 5(b) lien, the employer may avoid liability for contribution to the other tortfeasors allegedly responsible for the worker's injury." *LaFever*, 182 Ill. 2d at 399. The *Kim* court further noted that *LaFever* was directly on point, holding that "an employer is not required to raise its *Kotecki* setoff limit or workers' compensation lien as an affirmative defense or even before trial." *Kim*, 322 Ill. App. 3d at 668 n.5.

¶ 14 Our analysis of the holding in *LaFever* supports Keefe's position. In *LaFever*, the injured worker instituted a tort action and a premises liability action against the owner of the property where the injury occurred. The defendant/landowner in turn filed a third-party action against the injured worker's employer seeking contribution. The employer waited until after the jury verdict was rendered and only then sought to impose the set off right under *Kotecki*. The trial court then dismissed the contribution action against the employer. The appellate court reversed, holding that the employer was not permitted to wait until after the verdict was returned before asserting its *Kotecki* set off. Our supreme court reversed the appellate court, and on the issue of the impact of *Kotecki* on the contribution action, the court noted that "regardless of when [employer] waived its lien, its contribution liability was always capped at the same amount."

- 5 -

*LaFever*, 185 Ill. 2d at 403-04. The court further noted that "[w]hether [employer] waived its lien before or after the verdict, *Kotecki* and its progeny limited the maximum contribution liability for [employer] to the amount paid by [employer] in workers' compensation." *Id.* at 404. While the specific issue in *LaFever* was not whether a *Kotecki* set-off had to be plead as an affirmative defense in order to block a contribution action against the employer, it is implicit under *LaFever* that *Kotecki* is not an affirmative defense to a contribution action since the court held that *Kotecki* can be raised "before or after the verdict." *Id.*

¶ 15    Spiess cites several decisions in support of the proposition that a *Kotecki* set-off must be plead and proven as an affirmative defense. However, a review of those cases establish that they were either decided before *LaFever*, such as *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201 (1997) and *Herington v. J.S. Alberici Construction Co.*, 266 Ill. App. 3d 489 (1994), or they do not stand for the proposition that *Kotecki* must be raised as an affirmative defense in order to limit an employer's contribution liability. For example, Spiess refers to the fact that *Kotecki* is referred to as an "affirmative defense" in *Christy-Foltz, Inc. v. Safety Mutual Casualty Corp.*, 309 Ill. App. 3d 686, 691-93 (2000). We find that this reference to an "affirmative defense" is not controlling. While the court in *Christy-Foltz*, refers to the *Kotecki* right to set-off as an "affirmative defense," the holding in that case addressed whether an employer can *contractually* waive *Kotecki*. *Id.* at 692. It is clear from the holding in *Christy-Foltz* that the court is using the term "affirmative defense" in a generic sense, not in the context of pleading and proofs at trial. As such, it is of no assistance to Spiess in the instant matter.

¶ 16    Spiess relies heavily upon *Doyle v. Rhodes,* 101 Ill. 2d 1 (1984), in support of its proposition that *Kotecki* must be specifically plead as an affirmative defense. Spiess draws our attention to the *Doyle* court's statement:

"The Workers' Compensation Act provides employers with a defense against any action that may be asserted against them in tort, but that defense is an affirmative one whose elements -- the employment relationship and the nexus between the employment and the injury-- must be established by the employer, and which is waived if not asserted by him in the trial court." *Id*. at 10. (citing *Robertson v. Travelers Insurance Co.*, 95 Ill. 2d 441, 451 (1983).)

¶ 17 We find the *Doyle* court's favorable citation to *Robertson* to be instructive in this matter. While *Doyle* certainly referred to "an affirmative" defense which "is waived if not asserted" in the trial court, *Doyle* does not address whether the defense must be *plead*. *Id*. For the answer to that question, we can look to the *Doyle* court's citation to *Robertson*, where the court held:

"Robertson argues that inasmuch as the instant case was tried before a jury it was incumbent upon Travelers to plead and prove the statutory bar of the [Workers'] Compensation Act [citation], and its failure to do so could not be cured by raising the issue in the trial court in a posttrial motion as Travelers did. Although we do not dispute the general rule that a defense resting on the exclusivity provision of the Act is affirmative in nature, we do not believe Travelers' omission was fatal in this case. This court has held the failure to plead and prove such a defense decisive only where there was a factual question as to whether the injury alleged arose out of and in the course of the work, so that a verdict for the defendant despite failure to prove coverage was an impermissible shifting of the burden of proof. [Citations.] *** The question of whether the Workers' Compensation Act applied to the plaintiff's injuries was therefore purely a legal one, and no purpose would have been served by requiring its pleading before the jury as long as it came to the attention of the trial judge and Robertson was given a

chance to respond.  [Citations.]  The trial court had the discretion to entertain the issue in a posttrial motion ***." *Robertson*, 95 Ill. 2d at 451-52.

¶ 18    We find the court's reasoning in *Robertson* that a defense under the Act does not need to be *plead* before the matter is tried before a jury to be controlling.  Here, as in *Robertson*, the fact that the plaintiff was an injured employee receiving compensation under the Act from Keefe was not in dispute.  Thus, there was no need for Keefe to place the issue before the jury by pleading an affirmative defense.  Rather, the trial court could effectively address the issue by means of a posttrial motion.  *Id.*  Moreover, the holding in *LaFever* that *Kotecki* can be raised "before or after the verdict" also requires us to reject Spiess's argument that Keefer was required to plead and prove its *Kotecki* set-off as an affirmative defense.

¶ 19        2.  Did the Trial Court Properly Calculate the Amount of the *Kotecki* Set-off?

¶ 20    Spiess next argues that, if this court upholds Keefe's right to assert its *Kotecki* set-off after trial, it is still entitled to contribution from Keefe for the full amount of its *pro rata* share of the judgment because Keefe failed to prove the amount of the *Kotecki* set-off.  Essentially, the argument is that the affidavit supplied by Keefe when it moved to dismiss was insufficient to prove the amount of workers' compensation benefits actually paid to Burhmester.

¶ 21    This is an issue regarding the sufficiency of an affidavit and is governed by Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013).  Generally, a trial court's evidentiary ruling will not be overturned on appeal unless it constitutes an abuse of discretion.  *Mache v. Mache*, 218 Ill. App. 3d 1069, 1077 (1991).  However, where the affidavit supports a summary judgment motion or a motion to dismiss a complaint, this court will review the court's finding regarding the sufficiency of an affidavit *de novo*.  *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 22    Here, the affidavit submitted by the agent of Keefe's workers' compensation carrier was sufficient to establish that the affiant had personal knowledge of the facts contained in the affidavit and could competently testified to those facts at trial. *Id.* at 99. Additionally, the affidavit included documentary evidence including a settlement contract and a "payout screen" exhibit, which showed specific details of amounts paid in compensation and medical benefits. We find that the affidavit and the supporting documentation were sufficient to establish the amount of compensation paid by Keefe to which it was entitled to a set-off under *Kotecki*.

¶ 23    Spiess lastly suggests that the proper remedy would be to remand this cause for an evidentiary hearing on the full value of Burhmester's claim under the theory that future compensation is still owed. This argument is based upon the fact that there was a potential future medical benefit as much as $50,000 for which Burhmester appears to have executed a settlement agreement with Keefe for $1. Spiess cites *Sands v. J.I. Case Co.*, 239 Ill. App. 3d 19, 28 (1992) for the proposition that "an employer is subject to contribution to the extent of its reasonably projected liability for future medical payments under the [Workers' Compensation] Act, limited only by the amount of settlement and the percentage of fault apportioned to it." Since we affirmed the trial court's dismissal of Speiss's contribution claim, this argument is moot. See *LaFever*, 185 Ill. 2d at 404.

¶ 24                              CONCLUSION

¶ 25    For the foregoing reasons, the judgment of the circuit court of LaSalle County is affirmed.

¶ 26    Affirmed.