TONI L. DECKER, Special Adm'r of the Estate of Richard Decker, Deceased, Plaintiff-Appellee, v. ST. MARY'S HOSPITAL, Defendant-Appellant.

Fifth District    No. 5—93—0708

Opinion filed September 9, 1994.

Carl W. Lee and Thomas R. Peters, both of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellant.

Amiel Cueto, of Cueto, Cueto & Cueto, Ltd., of Belleville, for appellee.

JUSTICE MAAG delivered the opinion of the court:

This is a case with a tortured, and seemingly endless, history. Rather than restating this history in detail, we simply refer the parties to our earlier decision, *Decker v. St. Mary's Hospital* (1993), 249 Ill. App. 3d 802, 619 N.E.2d 537 (hereinafter *Decker I*). We will only describe the facts pertinent to our present decision.

On May 29, 1990, a jury rendered a verdict in favor of the plaintiff, Decker, and against the defendant, St. Mary's Hospital, in the amount of $360,000. Post-trial motions were filed by both parties. The defendant's motion was denied. Plaintiff's motion for a new trial on damages only was allowed. Upon retrial, a different jury, on December 12, 1990, assessed the damages in the sum of $1 million. The defendant filed a post-trial motion, which was denied. The defendant then appealed. This court affirmed that judgment in *Decker I*.

On September 29, 1993, plaintiff filed a motion to execute on the appeal bond. The motion sought the $1 million judgment amount, one year's prejudgment interest as a sanction, and interest on the $1 million judgment amount from May 29, 1990, the date of the first verdict.

The defendant objected to the payment of prejudgment interest. It also objected to paying interest on the judgment from May 29, 1990. Defendant further claimed that it was entitled to a setoff of $180,000. The requested setoff was based upon the fact that prior to trial plaintiff had settled with another defendant, Dr. Gandhy, for $180,000.

After hearing, the defendant's request for setoff was denied, and defendant was ordered to pay interest on the $1 million judgment amount from May 29, 1990, the date of the first verdict. The request for one year of prejudgment interest was denied. It is from that order that defendant appeals.

Two issues are raised by the defendant on appeal.

(1) Did the trial court err in computing interest from May 29, 1990, the date of the first verdict?

(2) Did the trial court err in refusing to reduce the $1 million judgment amount by $180,000 to reflect the settlement with Dr. Gandhy?

I

The defendant claims that it was improper to compute interest from the date of the first trial. According to defendant, when a new trial on damages only was ordered, there was no judgment in effect against which interest could accrue. Defendant further argues that no sum certain was due until the verdict was rendered in the second

trial and thus it was impossible to stop the accrual of interest by paying the judgment amount.

Plaintiff counters that the award of interest running from the first trial was made as a sanction to punish the defendant for misconduct in the first trial.

There is no question that in granting plaintiff's motion for a new trial on damages only, after the May 29, 1990, verdict, the trial court was attempting to remedy conduct on defendant's part that contributed to a lower verdict amount than was ultimately awarded upon retrial. However, contrary to plaintiff's assertion, the trial court's order that is the subject of this appeal, *i.e.*, the order awarding interest from May 29, 1990, expressly denied plaintiff's request for sanctions. While we express no opinion on whether the trial court could have ordered interest to run from the date of the first verdict as a sanction, it is clear that, in any event, that was not done.

■ This leaves us with a simple question of law to decide. That question is: When a judgment on liability and damages is entered, and the damage award is then set aside by the trial court and a new trial on damages only is ordered, does interest run from the date of the first verdict or the date of the verdict rendered upon retrial? For the reasons which follow, we conclude that interest runs from the date of the verdict rendered upon retrial, not the date of the original verdict and judgment.

Our starting point is the Civil Practice Law. Section 2—1303 of the Civil Practice Law (735 ILCS 5/2—1303 (West 1992)) provides:

> "Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied or 6% per annum when the judgment debtor is a unit of local government, as defined in Section 1 of Article VII of the Constitution, a school district, a community college district, or any other governmental entity. When judgment is entered upon any award, report or verdict, interest shall be computed at the above rate, from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment. Interest shall be computed and charged only on the unsatisfied portion of the judgment as it exists from time to time. The judgment debtor may by tender of payment of judgment, costs and interest accrued to the date of tender, stop the further accrual of interest on such judgment notwithstanding the prosecution of an appeal, or other steps to reverse, vacate or modify the judgment."

We believe that the "judgment" referred to in this section is the judgment entered which disposes of both the liability issue and the damage issue. This is clear from the face of the statute, because in the final sentence of the statute a judgment debtor is permitted to

stop the further accrual of interest on the judgment by tendering payment of the judgment, costs, and interest accrued up to the time of tender. Until such time as the damage amount is finally determined, there is no way to know how much money must be paid to stop the further accrual of interest. See *Thatch v. Missouri Pacific R.R. Co.* (1979), 69 Ill. App. 3d 48, 386 N.E.2d 1180; *Poe v. Industrial Comm'n* (1992), 230 Ill. App. 3d 1, 595 N.E.2d 593.

While we understand the plaintiff's frustration with having to retry the damage aspect of the case because of trial conduct of the defendant which led to a lowered verdict in the first trial, then receiving interest on the ultimate award only from the date of the verdict rendered upon retrial, we can do nothing to remedy the situation. It is true that the defendant profited from its own trial misconduct and delayed the imposition of a damage award and the accrual of interest for more than six months. This is an injustice. The remedy must be sought from the legislature, not this court. Accordingly, we conclude that the trial court erred in awarding interest from May 29, 1990. Due to the terms of the statute, interest may only be allowed from the date of the verdict in the second trial, December 12, 1990.

## II

The second issue which confronts us deals with whether the $1 million judgment amount should have been reduced to reflect the settlement with Dr. Gandhy. Before answering this question, we must trace the procedural posture and history of this case.

| | |
|---|---|
| February 15, 1989: | Plaintiff files petition for approval of settlement with Dr. Gandhy along with a copy of the verified release, releasing plaintiff's claim against Dr. Gandhy. The settlement amount is stated to be $180,000. |
| February 24, 1989: | Circuit court enters an order dismissing Dr. Gandhy from the action. |
| May 29, 1990: | Verdict rendered in the first trial. |
| July 20, 1990: | Both plaintiff and defendant file post-trial motions (time for filing was extended by the court). |
| August 31, 1990: | Circuit court grants plaintiff's motion for a new trial on damages only. Defendant's post-trial motion denied. |

September 24, 1990:   Defendant files second post-trial motion requesting that new trial order be vacated and for other relief.

September 26, 1990:   Defendant's second post-trial motion denied.

December 12, 1990:   Verdict rendered in second trial.

January 11, 1991:   Defendant files its post-trial motion.

February 8, 1991:   Defendant's post-trial motion is denied.

March 11, 1991:   Notice of appeal filed.

August 31, 1993:   Decision of appellate court is filed. Judgment for $1 million affirmed. The supreme court later denied leave to appeal. *Decker v. St. Mary's Hospital* (1993), 153 Ill. 2d 558, 624 N.E.2d 805.

At no time on or after February 15, 1989 (the date of Dr. Gandhy's settlement), through and including the denial of its petition for leave to appeal filed with the supreme court, did the defendant ever request that the judgment be reduced to reflect Dr. Gandhy's settlement. It was only after the $1 million judgment in plaintiff's favor was affirmed and became final and only after plaintiff proceeded to execute on that judgment that the defendant ever sought a reduction. It is true that the defendant filed an affirmative defense alleging that the release executed in favor of Dr. Gandhy also released it from all liability. It is also true that defendant raised this claim in each of its post-trial motions. But that affirmative defense was stricken by the trial court, the post-trial motion was denied, and defendant did not raise the matter as an issue on appeal in *Decker I*.

In any event, the issue before us is completely distinct from the issue raised by the defendant. What defendant claimed was that it was *no longer liable at all* by virtue of a *release*. It did not claim that any judgment against it should be *reduced* by virtue of a *settlement*. Now at this late date the defendant wants this court to delve into the merits of a final judgment that has been affirmed on appeal and that our supreme court has refused to hear.

Plaintiff argues that defendant has waived this issue because it failed to plead setoff as an affirmative defense under section 2—608 of the Civil Practice Law (735 ILCS 5/2—608 (West 1992)). *Vieweg v. Friedman* (1988), 173 Ill. App. 3d 471, 526 N.E.2d 364, is relied upon to support this contention. Defendant responds that the type of setoff discussed in *Vieweg* is different from the setoff involved in the case at bar. Defendant cites *Barkei v. Delnor Hospital* (1990), 207 Ill. App. 3d 255, 565 N.E.2d 708, to illustrate the distinction. *Barkei* essentially holds that the type of setoff involved when a joint tortfeasor settles and pays a sum of money to be released is akin to the concept of sat-

isfaction of judgment, rather than being in the nature of a counter-claim. Accordingly, the *Barkei* court held that the issue of setoff could be raised postjudgment if premised on a settlement with a joint tortfeasor.

We disagree. We conclude that while a claimed setoff need not be pleaded as an affirmative defense, neither should the issue be one that can be raised at the execution stage.

This court explained in *Hentze v. Unverfehrt* (1992), 237 Ill. App. 3d 606, 612, 604 N.E.2d 536, 541:

> "[The] [s]etoff [addressed in section 2—608] refers to the situation when a defendant has a distinct cause of action against the same plaintiff who has filed suit against him. [Citation.] The procedural concept of setoff is now subsumed under the term 'counterclaim.' "

The type of setoff defendant seeks in this case is not in the nature of a counterclaim. Rather, what is being sought is a mere reduction in damages. Therefore, while it would be appropriate to plead this request for setoff as an affirmative defense, we do not believe it is mandatory. It must, however, be raised at some point before the judgment becomes final.

In construing section 2—608, the court in *Miller v. Bank of Pecatonica* (1980), 83 Ill. App. 3d 424, 427, 403 N.E.2d 1262, 1264, stated:

> "[W]hile this section is designed to simplify the litigation be-tween parties by providing that all issues can be tried in one forum at the same time, it does not require a defendant to immediately assert his rights by way of counterclaim if it would be inconvenient or strategically inadvisable for him to do so. The word 'may' in the quoted words of the statute indicate[s] an election is available to the defendant and the cases have so interpreted this section."

Later in *YMCA v. Midland Architects, Inc.* (1988), 174 Ill. App. 3d 966, 971, 529 N.E.2d 288, 291, the court stated: "In the case of a pretrial settlement with some but not all of the defendants, assertion of defendant's right to setoff in a motion following the trial is appropriate and 'strategically advisable.' " To this we must add that it is not only "appropriate" and "advisable," it is mandatory if the defendant desires to gain the benefit of the prior settlement.

We explained in *Wheeler v. Roselawn Memory Gardens* (1989), 188 Ill. App. 3d 193, 543 N.E.2d 1328, that a motion requesting a reduction of the judgment due to a codefendant's pretrial settlement is not a true post-trial motion. The typical post-trial motion seeks to correct errors of law made during trial. In contrast, raising the defense of setoff or moving the court to modify the judgment to reflect the pretrial settlement seeks to modify the judgment.

The issue of whether to allow a setoff due to a pretrial settlement

with a codefendant is not a matter of simple arithmetic. Our supreme court recently explained in *Patton v. Carbondale Clinic, S.C.* (1994), 161 Ill. 2d 357, that a setoff or reduction in the judgment by virtue of a joint tortfeasor's pretrial settlement is not automatic. Similarly, in *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301, the court held that to determine whether a setoff is appropriate the court must consider whether the plaintiff has distinct causes of action against each defendant and whether one single indivisible injury is present or whether separate injuries can be identified.

We believe that the best time to make this determination is at the time of the good-faith hearing on the settlement, but in no case should the issue be raised later than the post-trial motion stage.

We have been lenient in the past and, despite claims of waiver, have agreed to consider a request for setoff in the initial appeal even though not raised at the post-trial motion stage. (*Kochan v. Owens-Corning Fiberglass Corp.* (1993), 242 Ill. App. 3d 781, 610 N.E.2d 683.) But even in that case we remanded the matter to the trial court to determine if a setoff was appropriate. We note that the defendant in *Kochan* at least raised the issue in the initial appeal. Further, the waiver doctrine is a limitation on the parties, not this court, and while a matter may have been waived by failure to raise it, we may in the interest of justice consider the point. (*Welch v. Johnson* (1992), 147 Ill. 2d 40, 48, 588 N.E.2d 1119, 1122.) We may not, however, re-open a final judgment to consider points not raised before the judgment became final. Moreover, we will look with disfavor in the future on tardy requests for setoff like those entertained in *Kochan*.

In the case at bar, the defendant failed at the time of the hearing on Dr. Gandhy's settlement to request a setoff; failed to plead setoff as an affirmative defense; failed to request a setoff in its post-trial motion; and failed to request a setoff in its initial appeal on the merits of the case.

To now request a setoff at the execution stage would require the trial court or this court to inquire again into the merits of the cause of action against Dr. Gandhy, the terms of her settlement, and the merits of the cause of action against the defendant, St. Mary's Hospital. We have no authority to reopen the judgment as requested. It is final.

All cases must have an end and a point where the only matter left to be done is execution on the judgment. The judgment order entered against the defendant recited that $1 million was owed. If the defendant believed that the amount stated was erroneous, it should have made the claim within the 30 days allowed for filing its post-trial motions. 735 ILCS 5/2—1202(c) (West 1992).

It is easy to argue that no harm is done by taking up the issue at

this time, particularly since the same circuit court that heard the case was the one that defendant ultimately requested a setoff from. What would happen, however, if the defendant was a Texas corporation and all of its assets were in Texas? If the plaintiff went to Texas to enforce his judgment in the Texas courts, would the Texas judge be called upon to investigate the merits of the underlying case, apply the rules announced in *Patton*, and weigh the factors that must be considered, all in a case about which he knows nothing? We think not! The Texas court would only have before it a judgment order reciting that $1 million is owed. We believe that the judgment order is the final word on what is owed. If the defendant believed it should be modified or reduced, the time to say so was before the judgment became final.

This is consistent with other statutorily provided methods for reduction in the amount stated in a judgment order. For example, sections 2—1205 and 2—1205.1 of the Civil Practice Law (735 ILCS 5/2—1205, 2—1205.1 (West 1992)) deal with certain types of collateral payments received by the plaintiff. When these statutes apply under the facts of a given case, the defendant is entitled to request a reduction in the judgment. However, the request must be made *within 30 days after the judgment is entered*. Obviously, the legislature did not want the courts to be faced with the same situation the defendant is now trying to thrust upon us.

It may well be that the defendant was entitled to a setoff. It may be that the judgment order stated a greater amount than was really owed. It may also be that no setoff was appropriate. But when a judgment becomes final, even if it is wrong, that judgment is just as binding as any other. (*Allendorf v. Daily* (1955), 6 Ill. 2d 577, 129 N.E.2d 673.) A judgment is final when it terminates the litigation so that the only remaining issue is proceeding with execution. *Elliott v. LRSL Enterprises, Inc.* (1992), 226 Ill. App. 3d 724, 589 N.E.2d 1074.

We are at the execution stage. The judgment was affirmed. The circuit court did not err in denying the requested setoff.

## CONCLUSION

Accordingly, we conclude that the circuit court erred in computing interest from May 29, 1990. The date from which interest must be computed is December 12, 1990. Therefore, the computation of interest is reversed, and this cause is remanded for the recomputation of interest in accordance with this opinion. Further, we find no error in the circuit court's refusal to grant the setoff requested.

Affirmed in part; reversed in part and remanded.

LEWIS, P.J., and RARICK, J., concur.