LANNIE C. KIM, Indiv. and as Special Adm'r of the Estate of John Paul Kim, Deceased, Plaintiff-Appellee, v. ALVEY, INC., Defendant and Third-Party Plaintiff-Appellant (Kraft Foods, Inc., Third-Party Defendant-Appellee; Sverdrup Corporation, Defendant).

First District (3rd Division)   No. 1—99—2523

Opinion filed March 30, 2001.—Rehearing denied June 13, 2001.

Clausen Miller, P.C. (James T. Ferrini, Steven N. Novosad, Paul V. Esposito, and Melinda S. Kollross, of counsel), for appellant.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Thomas A. Demetrio, Michael K. Demetrio, Shawn S. Kasserman, and Kenneth T. Lumb, of counsel), for appellee Lannie C. Kim.

Sanchez & Daniels, of Chicago (Manuel Sanchez, Deborah L. Nico, and Darryl Tom, of counsel), for appellee Kraft Foods, Inc.

JUSTICE BURKE delivered the opinion of the court:

Defendant and third-party plaintiff Alvey, Inc. (Alvey), appeals from orders of the circuit court: (1) entering judgment on a jury verdict in favor of plaintiff Lannie Kim; (2) finding, on plaintiff's motion to enforce settlement agreement between plaintiff and Alvey, a binding settlement and enforcing that agreement; (3) approving the distribution of settlement proceeds; and (4) allowing third-party defendant Kraft Foods, Inc. (Kraft), to waive its workers' compensation lien, granting Kraft's motion to dismiss Alvey's third-party complaint, and dismissing Alvey's posttrial motion seeking a directed verdict, judgment notwithstanding the verdict, vacatur of the jury verdict and entry of judgment in its favor, or a new trial, as moot. On appeal, Alvey contends that the trial court erred in considering Kraft's posttrial motion seeking to dismiss Alvey's third-party complaint because the motion was untimely, and the trial court erred in dismissing Alvey's third-party complaint without awarding Alvey a credit for

Kraft's liability. Alternatively, Alvey contends that the trial court erred in finding that the parties had reached a binding oral settlement agreement or that the trial court erred in denying as moot Alvey's posttrial motion or that the trial court erred in determining that Alvey was not entitled to a credit in the amount of Kraft's workers' compensation lien against the jury verdict. For the reasons set forth below, we affirm.

## STATEMENT OF FACTS

While working at a Nabisco plant (now Kraft), John Paul Kim's neck was crushed in a pinch-point on a palletizing machine manufactured by Alvey. Plaintiff Lannie Kim (Kim), John's wife, filed a complaint against Alvey and Sverdrup Corporation,[1] also involved in the manufacture of the machine, on behalf of herself individually and as special administrator of the estate of her husband, alleging wrongful death and survival actions on the bases of negligence and products liability. Alvey, in turn, filed a third-party complaint against Kraft, John's employer, for contribution.

Following a trial on plaintiff's complaint, the jury returned a verdict on January 27, 1999, finding for Kim against Alvey, and for Alvey against Kraft. The jury awarded Kim $2,250,000. The jury apportioned liability as follows: John, 25% negligent; Alvey, 25% negligent; and Kraft, 50% negligent. The trial court entered judgment on the jury verdict the same day. The trial court also entered an order amending the verdict, adding $28,884[2] for medical and funeral expenses. Based on the jury apportionment of liability, Kraft was obligated to pay $854,581 under the jury verdict. Kraft's workers' compensation lien,[3] although not finally determined, was alleged to be approximately $396,000.

On January 28, 1999, Alvey's attorney, Thomas Doell, offered $1.5 million to plaintiff's attorney, Shawn Kasserman, to settle the matter. To that end, correspondence was exchanged on January 29. Kasserman wrote to Alvey's insurance adjuster, Laurie Sacchitella, confirming the settlement for $1.5 million and requesting a check by February 2. Deborah Nico, Kraft's counsel, advised Sacchitella that Kraft did not want its name on the settlement draft. A dispute subsequently arose between Kasserman and Doell as to the settlement. It was Doell's belief that the amount of Kraft's workers' compensation lien

---

[1]Sverdrup was voluntarily dismissed from the suit prior to trial.

[2]All numbers have been rounded off to the nearest dollar.

[3]Section 5(b) of the Workers' Compensation Act gives an employer a lien on any recovery an employee obtains from a third-party tortfeasor. 820 ILCS 305/5(b) (West 1998).

would be set off from the $1.5 million settlement amount. Kasserman did not agree.

On February 2, plaintiff filed an emergency motion to enforce the settlement. At the hearing on the motion on the same day, Alvey argued that the settlement amount was gross, not net, and that the parties agreed to work out the workers' compensation lien later. Kraft's counsel argued that Kraft could waive its workers' compensation lien at any time which would satisfy its obligation and extinguish its liability on the contribution claim. Following the hearing, the trial court entered an order requiring Alvey's insurance carrier to deposit its check with the clerk of the court and continued the case.

On February 26, Alvey filed a posttrial motion seeking a directed verdict or judgment notwithstanding the verdict in its favor, vacatur of the jury verdict and entry of judgment in its favor, or a new trial. On March 2, Kraft filed a motion requesting that the court dismiss Alvey's third-party complaint and accept a waiver of its workers' compensation lien. On March 11, Alvey filed a motion to dismiss plaintiff's motion to enforce the settlement. On the same day, Alvey also filed its response to Kraft's motion in which it contended that Kraft's motion was untimely, that Kraft failed to raise the lien issue before, and that Kraft never timely raised its alleged affirmative defense to limit the amount of setoff to its workers' compensation lien as required pursuant to *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155, 165, 585 N.E.2d 1023 (1991), and, therefore, waived it.

On March 24, the trial court denied Alvey's motion to dismiss Kraft's motion and ordered that an evidentiary hearing be held on plaintiff's motion to enforce settlement. On the same day, plaintiff filed a petition to approve distribution of the settlement proceeds. This motion was later granted, on May 25, at which time the trial court dismissed plaintiff's complaint against Alvey.

On April 9, after a series of continuances, an evidentiary hearing was held on plaintiff's motion to enforce the settlement. The parties first agreed that the depositions that had been taken of Sacchitella, Kasserman, and Nico would stand as evidentiary depositions.[4] Alvey then presented its arguments to the court, contending that Kasserman negotiated with its adjuster (Sacchitella), who was unrepresented by counsel and who did not know the mechanics of liens, and arguing that Kraft could not waive its lien because it did not know the amount of the lien and it had failed to file a timely posttrial motion. Doell, Kasserman, and Sacchitella also testified at the hearing. Kasserman's

---

[4]Due to page-limit constrictions, only a summary of the salient testimony of each participant in the settlement negotiations is provided.

and Sacchitella's testimony was consistent with that given in their respective depositions, although the deposition testimony provided greater detail.

Doell's testimony at the hearing was basically that there was more to the agreement than payment of $1.5 million "flat." According to Doell, the offer was dependent upon recovering the amount of Kraft's workers' compensation lien.

In substance, Kasserman's testimony was that the offer and agreement was $1.5 million with no credit or set off. Kasserman stated that there were no discussions between either him and Doell or him and Sacchitella concerning the lien, a setoff, or paying the money back. He did state, however, that prior to beginning settlement negotiations with Doell, the lien was mentioned. Specifically, Kasserman stated that he asked Doell if Doell was concerned that Kraft might waive the lien out from under Doell, and Doell stated that Kraft could not do that because Alvey had a judgment against Kraft. According to Kasserman, the only terms of the settlement were that Alvey would pay $1.5 million and the check would be delivered to Kasserman's office by the end of the business day on Tuesday, February 2.

Sacchitella, Alvey's insurance adjuster, testified, in summary, that when she and Doell discussed the settlement on Thursday January 28, it was $1.5 million gross, that Doell advised her not to worry about the lien, and that Doell told her the lien was to be worked out the next week either via a credit or payment from Kraft. Sacchitella stated that she did not know how she was to get the money back but "always expected to" to get it back. According to her, recovery of the amount of the workers' compensation lien was very important.

Pursuant to the parties' agreement, the trial court, prior to ruling on plaintiff's motion to enforce the settlement agreement, considered both Kasserman's and Sacchitella's deposition testimony, which again was consistent with the above-summarized testimony, along with the deposition testimony of Deborah Nico, Kraft's attorney. Nico testified at her deposition that she spoke with both Doell and Kasserman on Friday, January 29. Nico believed she first told both Doell and Kasserman that Kraft would waive its lien and thereafter both stated that they were trying to settle the case. Nico stated that she specifically told Doell that Kraft was going to waive its lien and he replied, "Fine. No problem." On Monday, February 1, Nico received a call from Doell. She got the idea that Doell wanted a check from Kraft in the amount of its workers' compensation lien, but advised Doell that Kraft had waived its lien and that was the extent of Kraft's obligation. Nico further stated that she got the impression that Doell was not familiar with the effect of a lien waiver and that Doell realized, for the first

time in his conversation with her on Monday, what had happened regarding the issue of a setoff of Kraft's lien, *e.g.*, there would be no credit or set off from the $1.5 million settlement.

On April 12, the trial court issued its decision, finding that there was a meeting of the minds and it was not of the opinion that the settlement offer was conditioned upon Alvey receiving a credit or set-off of Kraft's lien. Accordingly, the court ordered enforcement of the settlement agreement and release of the check to plaintiff.

On June 4, Alvey filed a memorandum in opposition to Kraft's motion seeking a dismissal of Alvey's third-party complaint and acceptance of its lien waiver. On June 16, the trial court heard arguments on Kraft's motion, at which time only Kraft's and Alvey's attorneys were present. The trial court noted that Alvey had no judgment against Kraft, disagreeing with Alvey's argument that judgment had been entered on Alvey's counterclaim. The court then issued its opinion, allowing Kraft to waive its workers' compensation lien and granting Kraft's motion to dismiss Alvey's third-party complaint. The court further concluded that Alvey's posttrial motion was moot by virtue of the court's decision on April 12, 1999, at which time the court had found a valid settlement agreement between plaintiff and Alvey. This appeal followed.

## ANALYSIS

### I. Kim's Motion to Dismiss Appeal

Subsequent to the filing of this appeal, Kim filed a motion to dismiss the appeal based on lack of jurisdiction over those portions of the appeal that relate to the claims against Kim. We took the motion with the case. In her motion, Kim alleges that the trial court's April 12, 1999, order enforcing the settlement was a final and appealable order. Kim argues that Alvey was required, but failed, to appeal the April 12 order within 30 days pursuant to Supreme Court Rule 304(a). 155 Ill. 2d R. 304(a).

Alvey argues that Rule 304(a) is not applicable because the April 12 order was not a final judgment and it did not contain the requisite language to make the order immediately appealable. According to Alvey, Kim's claims against Alvey were not finally disposed of until May 25 when the trial court dismissed Kim's complaint against Alvey.

■ "In Illinois, a judgment is considered final only if it 'finally disposes of the rights of the parties either upon the entire controversy or upon some definite and separate branch thereof.' [Citation.] A final judgment 'decides the controversy between the parties on the merits and fixes their rights, so that, if the judgment is affirmed, nothing remains for the trial court to do but to proceed with the execution.'

[Citation.]" *Pempek v. Silliker Laboratories, Inc.*, 309 Ill. App. 3d 972, 978, 723 N.E.2d 803 (1999).

■ We find that the May 25, 1999, order was a final order as to the claims between Alvey and Kim, disposing of all litigation and claims between them. There was nothing left to do but enforce the judgment, which the trial court did in the same order by mandating the release of the settlement draft to Kim. However, the May 25 order did not dispose of the claims between Alvey and Kraft. Alvey's counterclaim remained pending until June 16, 1999. Because the May 25 order disposed of less than all the claims involved in the lawsuit, appellate jurisdiction would only exist pursuant to Supreme Court Rule 304(a), which requires an express finding by the trial court that there is no just reason to delay enforcement or appeal or both. There was no such finding by the trial court in the instant case. Because "this case is a multiparty action, and the trial court did not include Rule 304(a) language," there would be no appellate court jurisdiction from an appeal from the May 25 order. See *Puleo v. McGladrey & Pullen*, 315 Ill. App. 3d 1041, 1046, 735 N.E.2d 710 (2000). Thus, the claims raised before the trial court were not appealable until the trial court entered its order on June 16, disposing of all claims in the litigation. Accordingly, we deny Kim's motion to dismiss this appeal.

## II. Trial Court's Jurisdiction Over Kraft's Posttrial Motion

Alvey contends that the trial court lacked jurisdiction over the issues raised in Kraft's posttrial motion because Kraft failed to timely file the motion. According to Alvey, pursuant to section 2—1202 of the Code of Civil Procedure (735 ILCS 5/2—1202 (West 1998)), Kraft had until February 26 to file its posttrial motion but did not file it until March 2 and, therefore, the trial court lost jurisdiction to consider the motion and the judgment entered against Kraft on January 27 "stands."

Kraft contends that the trial court had jurisdiction. According to Kraft, section 2—1202 is not applicable because Kraft's motion was based on Kraft's waiver of its workers' compensation lien, which was a procedural rather than a substantive motion attacking the judgment and, therefore, it was not a posttrial motion. According to Kraft, its motion did not seek to preserve or correct any errors committed by the trial court, nor did it seek to attack the judgment; Kraft only sought to enforce its legal right to extinguish its contributory liability by waiving its workers' compensation lien.

■ We briefly note that the trial court's ruling, that because Alvey filed a timely posttrial motion Kraft was excused from timely filing a posttrial motion, is erroneous. Illinois law is clear that the fact that

one party files a timely posttrial motion does not excuse another party's obligation to file its posttrial motion within the statutory 30-day period after entry of judgment. *Burnidge Corp. v. Stelford,* 309 Ill. App. 3d 576, 579, 723 N.E.2d 394 (2000).

■ With respect to the 30-day time limit for filing a motion after entry of judgment, in *Star Charters v. Figueroa,* 192 Ill. 2d 47, 733 N.E.2d 1282 (2000), the Illinois Supreme Court held that a defendant's posttrial motion requesting a setoff from amounts paid by other defendants pursuant to a settlement agreement need not be filed within 30 days after entry of judgment. The supreme court held:

> "[A] defendant's request for setoff to reflect amounts paid by set-
> tling defendants seeks not to *modify,* but rather to *satisfy,* the
> judgment entered by the trial court. [Citations.] Such a request
> does not arise as a result of trial, but is instead in the nature of a
> supplementary or enforcement proceeding within the inherent
> power of the judgment court. Because the request is not a motion
> directed against the judgment, it is not subject to the 30-day time
> limit applicable to post-trial motions." (Emphasis in original.) *Star
> Charters,* 192 Ill. 2d at 48-49.

In *Jackson v. Polar-Mohr,* 115 Ill. App. 3d 571, 450 N.E.2d 1263 (1983), an employer filed a petition to intervene in its employee's lawsuit against a negligent tortfeasor defendant. Following a jury verdict in the plaintiff's favor against the defendant, both the plaintiff and the defendant filed timely posttrial motions. In his motion, the plaintiff sought to dismiss the petition to intervene. The trial court granted the motion on the basis that the employer had failed to file anything with the court within 30 days of judgment to cause the court to act on the petition to intervene. *Jackson,* 115 Ill. App. 3d at 573. The *Jackson* court reversed, holding that the trial court erred in deny-ing the employer relief because the employer did not need to file a posttrial motion within the 30-day period pursuant to section 2—1202. Specifically, the court stated:

> "Since the issue before the trial court did not concern trial error
> but rather a distinct and collateral claim by an intervening party,
> section [2—1202] does not apply. [The employer] [does] not seek to
> challenge the validity or correctness of the judgment, but simply to
> assert its lien on the proceeds of that judgment." *Jackson,* 115 Ill.
> App. 3d at 573.

■ While none of these cases involve the specific facts before this court, they are instructive. In its motion, Kraft sought to waive its workers' compensation lien and to dismiss Alvey's third-party com-plaint. By virtue of this motion, Kraft sought to *satisfy* the judgment entered against it on January 27 and extinguish its contributory li-ability. Kraft did not seek to vacate or correct the judgment. Based on

*Star Charters*, *Siegel*, and *Jackson*, Kraft was not required to file its motion within 30 days after entry of the judgment on the jury's verdict in order for the trial court to have jurisdiction.

Based on the foregoing, we conclude that the trial court had jurisdiction over Kraft's motion.

### III. Propriety of Trial Court's Decision Allowing Kraft to Waive Its Lien and Dismissing Alvey's Third-Party Complaint

Alvey next contends that Kraft waived its alleged affirmative defense to limit the amount of setoff to its workers' compensation lien pursuant to *Kotecki* by failing to raise it prior to judgment. Alvey argues that the *Kotecki* setoff limit is an affirmative defense that is treated as any other affirmative defense; if it is not raised, it is waived. Alvey maintains that because Kraft first raised its defense in its posttrial motion, it waived the issue.

In *Kotecki*, the court held that an employer is liable for contribution to a third party only to the extent of its "workers' compensation liability." *Kotecki*, 146 Ill. 2d at 165. While several cases have referred to the *Kotecki* limit as an affirmative defense (*Christy-Foltz, Inc. v. Safety Mutual Casualty Corp.*, 309 Ill. App. 3d 686, 688, 722 N.E.2d 1206 (2000); *Duncan v. Church of the Living God*, 278 Ill. App. 3d 588, 594, 662 N.E.2d 1371 (1996)), we do not agree with Alvey that if the *Kotecki* limit or workers' compensation lien is not raised prior to trial as an affirmative defense, it is waived.

We find *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 706 N.E.2d 441 (1998), directly on point. In *LaFever*, the plaintiff sued the defendant Kemlite for injuries he sustained while working on Kemlite's premises. Kemlite then filed a third-party complaint against Banner Western Disposal (Banner), the plaintiff's employer. The jury returned a verdict in the plaintiff's favor in the amount of $1,122,261. The jury further found that Banner was liable to Kemlite on the third-party complaint. Banner filed a posttrial motion seeking to waive its workers' compensation lien to satisfy its contributory liability. The trial court granted Banner's motion and dismissed the third-party complaint. *LaFever*, 185 Ill. 2d at 387.

The appellate court reversed the trial court's order granting Banner's posttrial motion, finding that the statutory lien could not be waived after entry of the jury verdict. *LaFever*, 185 Ill. 2d at 388. The supreme court reversed, noting that an employer can waive the lien it holds on any third-party recovery and avoid liability for contribution to other tortfeasors. *LaFever*, 185 Ill. 2d at 399. The supreme court further noted that whether Banner waived the lien or not, its contributory liability was always limited to the amount of its workers'

compensation lien. Specifically, the *LaFever* court stated: "Whether Banner waived its lien before or after the verdict, *Kotecki* and its progeny limited the maximum contribution liability for Banner to the amount paid by Banner in workers' compensation." *LaFever*, 185 Ill. 2d at 404. The *LaFever* court thus concluded that it was proper for Banner to raise its lien in a posttrial motion and to waive the lien after the jury verdict. *LaFever*, 185 Ill. 2d at 405.

■ *LaFever* clearly allows an employer to raise its lien in a posttrial motion. Alvey's argument that the *Kotecki* setoff limit is as an affirmative defense that must be raised prior to trial is not supported by existing case law. We therefore reject Alvey's waiver argument and hold that the trial court properly allowed Kraft to raise and waive its lien.[5]

Based on the foregoing, we conclude that the trial court had juris-

---

[5]We note that our decision is further supported by other case law. First, Illinois law establishes that an employer may intervene in an employee's action filed against a third-party tortfeasor "at any time *prior to satisfaction of judgment.*" (Emphasis added.) *Ratkovich v. Hamilton*, 267 Ill. App. 3d 908, 914, 642 N.E.2d 834 (1994), citing 820 ILCS 305/5(b) (West 1998); *Jackson*, 115 Ill. App. 3d at 574. Thus, it is not necessary that a lien be raised as an affirmative defense or before trial.

Further, in *Scott v. Industrial Comm'n*, 184 Ill. 2d 202, 703 N.E.2d 81 (1998), the court held that an employer is not required to intervene in an employee's action against a third-party tortfeasor so that the employer can assert its lien in order to recover amounts obtained by its employee from a third party. *Scott*, 184 Ill. 2d at 216. In fact, the employer may seek to have the Illinois Industrial Commission determine the credit to which it is entitled. In *Scott*, the court determined that the employer's insurance carrier properly sought a determination before the Industrial Commission as to the amount of credit it was entitled to where the third-party action had become final and the third-party tortfeasor had made settlement payments to the plaintiff since it was too late for the employer to obtain a lien in the third-party action. *Scott*, 184 Ill. 2d at 218.

Lastly, in *Decker v. St. Mary's Hospital*, 266 Ill. App. 3d 523, 639 N.E.2d 1003 (1994), the court addressed the timing of requests for setoffs, although in the context of a pretrial settlement with another defendant. In *Decker*, the plaintiff filed a lawsuit against the defendant doctor and the defendant hospital. Prior to trial, the plaintiff settled with the doctor for $180,000. The jury returned a verdict against the hospital for $360,000, after which the plaintiff's motion for a new trial on damages was granted. Following a new trial on the issue of damages only, the plaintiff was awarded $1 million. *Decker*, 266 Ill. App. 3d at 524. The hospital appealed, and we affirmed. Thereafter, when the plaintiff filed a motion to execute on the appeal bond, the hospital claimed it was entitled to a setoff of $180,000. The trial court denied the

diction over Kraft's motion to waive its lien and dismiss Alvey's third-party complaint.

## IV. Settlement Agreement

Alvey next contends that the trial court erred in finding that Alvey and plaintiff entered into an enforceable settlement agreement.

█ Illinois encourages the settlement of claims and, to that end, settlement agreements may be oral. *Stone v. McCarthy*, 206 Ill. App. 3d 893, 901, 565 N.E.2d 107 (1990). Enforcement and construction of settlement agreements is governed by the law of contracts. *Lampe v. O'Toole*, 292 Ill. App. 3d 144, 146, 685 N.E.2d 423 (1997). "As with any contract, there must be an offer, an acceptance, and a meeting of the minds on terms." *Lampe*, 292 Ill. App. 3d at 146. An oral settle-

---

hospital's motion for a setoff and the defendant appealed. *Decker*, 266 Ill. App. 3d at 524. We affirmed. On appeal, the plaintiff had argued that the hospital had waived the issue because it failed to file an affirmative defense under section 2—608 of the Code of Civil Procedure (735 ILCS 5/2—608 (West 1998)). *Decker*, 266 Ill. App. 3d at 527. We first distinguished a setoff under section 2—608 because, under that section, a setoff is in the nature of a counterclaim. In *Decker*, however, the setoff was "akin to the concept of satisfaction of judgment, rather than being in the nature of a counterclaim." *Decker*, 266 Ill. App. 3d at 527-28. In other words, the hospital claimed a "mere reduction in damages." *Decker*, 266 Ill. App. 3d at 528. We concluded that "while a claimed setoff [in the nature of satisfaction of a judgment] need not be pleaded as an affirmative defense, neither should the issue be one that can be raised at the execution stage." *Decker*, 266 Ill. App. 3d at 528. We reiterated that "while it would be appropriate to plead this request for setoff as an affirmative defense, we do not believe it is mandatory. It must, however, be raised at some point before the judgment becomes final." *Decker*, 266 Ill. App. 3d at 528. Further, quoting *Young Men's Christian Ass'n v. Midland Architects, Inc.*, 174 Ill. App. 3d 966, 971, 529 N.E.2d 288 (1988), the *Decker* court stated that the "assertion of defendant's right to setoff in a motion following the trial is appropriate and 'strategically advisable' " (*Decker*, 266 Ill. App. 3d at 528), but in no case should the issue be raised later than the posttrial motion stage (*Decker*, 266 Ill. App. 3d at 529). The *Decker* court concluded that the hospital could not raise the issue because it had not done so until after the first appeal and at a time when the plaintiff was attempting to execute on the judgment. *Decker*, 266 Ill. App. 3d at 529.

These cases illustrate that an employer is not required to raise its *Kotecki* setoff limit or workers' compensation lien as an affirmative defense or even before a trial. Clearly, an employer may raise the issue of its liability limit in a subsequent proceeding when it is not a part of the third-party action. *Decker* is instructive because the workers' compensation lien is akin to the lien addressed in *Decker*; the workers' compensation lien is in the nature of satisfaction of a judgment, not in the nature of a counterclaim.

ment agreement is enforceable absent fraud or mistake (*Lampe*, 292 Ill. App. 3d at 146) or duress (*Johnson v. Hermanson*, 221 Ill. App. 3d 582, 585, 582 N.E.2d 265 (1991)). However, a unilateral mistake does not render the agreement unenforceable (*Cole Taylor Bank v. Cole Taylor Bank*, 224 Ill. App. 3d 696, 708, 586 N.E.2d 775 (1992); *Johnson*, 221 Ill. App. 3d at 585)) and has no effect on the validity of the agreement itself (*In re Marriage of Lorton*, 203 Ill. App. 3d 823, 826, 561 N.E.2d 156 (1990)). Whether the parties intended any condition as a term is a question of fact. *Lampe*, 292 Ill. App. 3d at 147. The determination of whether a valid settlement occurred is in the trial court's discretion and we will not reverse its decision unless it is contrary to the manifest weight of the evidence, *e.g.*, unless an opposite conclusion is clearly apparent. *Webster v. Hartman*, 309 Ill. App. 3d 459, 460, 722 N.E.2d 266 (1999).

■ Alvey's first argument against enforcement of the settlement agreement is that Kasserman improperly renegotiated with Sacchitella without Doell's consent, review, or approval, and that Rule 4.2 of the Rules of Professional Conduct (134 Ill. 2d R. 4.2) prohibits an attorney (Kasserman in this case) from communicating with a party represented by counsel (Sacchitella), which Kasserman violated on January 29, 1999, by renegotiating the settlement with Sacchitella. According to Alvey, Kasserman's "duplicitous conduct was clearly intended to trick Ms. Sacchitella"—a layperson who was unaware of the mechanics of liens and the legal import of Kasserman's statements. Thus, Alvey maintains that because of Kasserman's inappropriate conduct, which was "contrary to public policy and morals," the settlement agreement should not have been enforced.

We find Alvey's argument incredulous. It is customary in the personal injury field for plaintiffs' attorneys to negotiate for settlement with insurance adjusters and other relevant personnel without defense counsel's presence or involvement. Sacchitella admitted in her deposition that she had authority to negotiate without Doell and, in fact, had done so on numerous occasions throughout these proceedings. We also find Alvey's argument, that Sacchitella was "trickable" because she was a "layperson" and not an attorney and was without pertinent knowledge, absurd. As plaintiff points out, Sacchitella held a high position with the insurance carrier and had been in the business for at least 18 years. While she claimed not to know the "mechanics" of liens, it is clear from her testimony that she knew of the existence of Kraft's workers' compensation lien and knew that third-party tortfeasors generally have a right to a credit or setoff of the amount paid by the workers' compensation carrier to a plaintiff. Sacchitella could have raised the lien issue in her discussions with Kasserman. In es-

sence, Alvey is accusing plaintiff's counsel of deceptive or fraudulent conduct. This is very disturbing to us and will be further addressed below.

Alvey next argues that the parties did not have a meeting of the minds—Doell and Sacchitella believed that the $1.5 million figure was gross and that it would be reduced or set off by the amount of Kraft's workers' compensation lien, whereas Kasserman believed that the amount was net. Based upon a thorough review of the deposition and hearing testimony with respect to settlement negotiations, it is abundantly clear that a setoff or credit as a condition of the settlement was *never* mentioned by either Doell or Sacchitella in any of the discussions with Kasserman. Since Kasserman did mention the lien to Doell *prior* to the time Doell made his offer to Kasserman, if Doell believed that a setoff or credit was a condition of the settlement offer, he beyond question would have said something to Kasserman when he made the offer, particularly given the fact that the lien had been mentioned just prior to the offer. Further, it is also clear that Doell and Kasserman were advised, prior to settlement negotiations, that Kraft would waive its lien. Thus, if a setoff was intended to be a condition of the settlement, Doell logically would have discussed it with Kasserman. Similarly, while Sacchitella stated that the setoff or credit was important to her, she too failed to mention anything to Kasserman about a setoff or the fact that Doell advised her the lien issue would be worked out the next week. Again, if a setoff was meant to be a term of the settlement, it would be logical for Sacchitella to raise it at the time of her discussions with Kasserman. This is particularly true when the two discussed who would be named on the settlement draft.

Plaintiff's contention that this case involves a unilateral mistake on the part of Doell has merit. It is clear from Nico's testimony that Doell was not aware of the ramifications of *LaFever*, nor of the effect of a lien waiver. Nico's testimony also indicates that Doell did not realize the effect of the waiver until he spoke with her on Monday. It was only at this time that Doell raised the issue.

Based on the evidence in the record, we conclude that an opposite conclusion as to the terms of the settlement agreement is not clearly apparent in this case. There was ample evidence to support the trial court's decision that a setoff was not a condition of the settlement offers made by Doell on Thursday, January 28, and Sacchitella on Friday, January 29, and that the parties had a meeting of the minds on the material terms of the settlement agreement. Accordingly, we hold that the trial court's decision was not against the manifest weight of the evidence and, therefore, we will not disturb its finding.

●■ Lastly, Alvey contends that plaintiff will receive a double recovery if a setoff is not allowed.

In Illinois, a plaintiff is entitled to only one recovery for an injury and a double recovery is against public policy and condemned. *Pearson v. Stedge*, 309 Ill. App. 3d 807, 813, 723 N.E.2d 773 (1999). Thus, generally, any judgment or settlement with a third party must be offset by the amount of workers' compensation benefits recovered by a plaintiff, even when the employer waives the workers' compensation lien. *Eastman v. Messner*, 188 Ill. 2d 404, 412-13, 721 N.E.2d 1154 (1999).

Following the jury verdict here, plaintiff was entitled to $1,709,163, after reduction for plaintiff's decedent's contributory negligence. Under normal circumstances, the workers' compensation lien would be a setoff from this amount when plaintiff sought to execute on the judgment. However, we do not have normal circumstances in the instant case because the parties entered into a valid settlement agreement, which did not include a provision that the workers' compensation lien would be set off from the settlement amount.

In *In re Salmonella Litigation*, 249 Ill. App. 3d 173, 183, 618 N.E.2d 487 (1993), the court held that the double recovery doctrine "should not apply to settlements because a settlement is a contract which governs the plaintiff's recovery." In *Salmonella*, the plaintiffs received certain sums from their insurance carrier under their employee health benefits insurance. The plaintiffs then settled with Jewel, which claimed a lien on the insurance payments. The trial court refused to allow a lien because the settlement agreement did not expressly provide for a setoff. *Salmonella*, 249 Ill. App. 3d at 175. The *Salmonella* court agreed with the trial court, which had reasoned:

> "This is a contract case. This motion does not involve a payment required by a judgment entered against Jewel. It involves a settlement agreement negotiated by Jewel and the claimants-plaintiffs." *Salmonella*, 249 Ill. App. 3d at 183.

We find *Salmonella* persuasive and adopt its reasoning here. Alvey freely and voluntarily negotiated a settlement following the jury verdict, which did not provide for any setoff. Because this was a negotiated contract, which governs Alvey's payment and not a payment required pursuant to a judgment, the double recovery doctrine does not apply.

Based on our conclusion that the parties reached a valid settlement, we need not address Alvey's further contentions that we must remand this cause for a determination on its posttrial motion and that it is entitled to a setoff from the jury verdict; both issues are moot since the jury verdict was superseded by the settlement.

## RULE 375

■ Neither plaintiff nor Kraft has specifically requested sanc-

tions, but this court may invoke Supreme Court Rule 375(b) on its own initiative where it deems it appropriate. 155 Ill. 2d R. 375(b); *First Federal Savings Bank v. Drovers National Bank*, 237 Ill. App. 3d 340, 344, 606 N.E.2d 1253 (1992). Rule 375 provides: "If, after consideration of an appeal or other action pursued in a reviewing court, it is determined that the appeal or other action itself is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose ***, an appropriate sanction may be imposed upon any party or the attorney or attorneys of the party or parties." 155 Ill. 2d R. 375(b). We believe that, absent a showing by Alvey to the contrary, this appeal is frivolous and not taken in good faith but rather for an improper purpose, thus warranting sanctions. *First Federal Savings Bank*, 237 Ill. App. 3d at 344. Alvey's improper purpose is to correct its trial counsel's error. The insurance company gave plaintiff a check for $1.5 million which clearly stated on its face, "Full and Final Settlement." On appeal, Alvey now contends that this is not what it really intended to do and that the settlement was not full and final, nor was it complete. What we have in this case is an unhappy defendant and its counsel because of an error trial counsel made. Since Doell apparently lacked knowledge of the law regarding waiver and setoff of workers' compensation liens and, therefore, failed to protect Alvey and its insurance carrier, Alvey's appellate attorneys are now attempting to ignore Doell's mistake and lack of knowledge of the law by accusing plaintiff's counsel of fraudulent conduct.

We further observe that Alvey's counsel, in filing this appeal, make groundless arguments to this court. Rule 375 imposes upon Alvey's counsel "a good-faith duty *** to refrain from making arguments before this court that are clearly contradicted by [the] record" and law. *Sacramento Crushing Corp. v. Correct/All Sewer, Inc.*, 318 Ill. App. 3d 571, 581 (2000). Alvey's counsel accuse opposing counsel of fraud predicated upon Kasserman's negotiations with an experienced, high-positioned insurance director. Alvey's counsel are even bold enough to argue that plaintiff's counsel violated Rule 4.2—a contention without any support in fact or law. Alvey isolates one negotiation session between Kasserman and Sacchitella, ignoring the prior repeated negotiations between Kasserman and Sacchitella. Clearly, insurance adjusters do not need defense counsel's permission to negotiate with a plaintiff's counsel. In fact, it is defense counsel who needs authority from an insurance carrier to negotiate a potential settlement with a plaintiff since the settlement funds ultimately come from the carrier. Alvey's argument that Kasserman acted deceptively and fraudulently is entirely unfounded. "The decision to accuse an opposing party or its counsel of perpetrating a fraud on the court is a

momentous one. When the decision is made to go forward on such a charge, one would hope that the charging party was solidly armed with competent, clear, and convincing evidence supporting his theory." *Sacramento Crushing Corp.*, 318 Ill. App. 3d at 581. Here, we are particularly disturbed that Alvey's counsel chose to accuse a fellow officer of the court of an offense possibly meriting disbarment for the sole purpose of ignoring Doell's mistake and lack of knowledge of the law, in particular, *LaFever.*

■ Based on the foregoing, we thus order Alvey and its appellate counsel to show cause why a sanction should not be imposed on the ground that this appeal is frivolous under the standard of Supreme Court Rule 375(b). Should Alvey and its counsel fail to make such a showing, we shall consider this a basis for sanctions. See *First Federal Savings Bank*, 237 Ill. App. 3d at 346. Our decision on this matter is not meant to discourage attorneys from zealously representing their clients or from bringing appeals that have arguable merit. However, unless Alvey and its counsel are able to persuade us otherwise, this is not such an appeal. See *First Federal Savings Bank*, 237 Ill. App. 3d at 347. Accordingly, we direct Alvey and its counsel to file a brief or memorandum with this court, within 14 days of the date of the instant order, showing why we should not impose sanctions or attorney fees under Supreme Court Rule 375(b). If we decide thereafter that this appeal warrants sanctions, we shall order plaintiff to file a statement of reasonable expenses and attorney fees incurred as a result of this appeal, to which Alvey and its counsel will have an appropriate opportunity to respond. Thereafter, this court will file a supplemental opinion or order determining the amount of the sanction to be imposed upon Alvey and its counsel. See *First Federal Savings Bank*, 237 Ill. App. 3d at 347-48.

## CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

HALL, P.J., and WOLFSON, J., concur.